# Wytheville.

## CHILES V. BOWYER AND OTHERS.

### June 10, 1920.

1. REFORMATION OF INSTRUMENTS—*Mistake—Deed to Husband and Wife—Case at Bar.*—In a suit by complainant representative of husband against the heirs of the wife, to reform a deed to a husband and wife on the ground that the wife's name was inserted by mistake, it was held that complainant failed to sustain the contention that the wife's name was inserted by mistake. There was everything in the form and structure of the deed to indicate that it was deliberately and accurately written, and that all of the parties understood that the conveyance was made jointly to the husband and wife.

2. REFORMATION OF INSTRUMENTS—*Mistake—Evidence—Declarations in Disparagement of Title.*—In a suit by one claiming under the husband against the heirs of his wife, to reform a joint deed to the husband and wife, on the ground that the wife's name was inserted in the deed by mistake, evidence to show that the husband assured his wife that the deed had been made to them both, and that he admitted to others that his wife had a half interest in the property conveyed, was clearly admissible, because it detailed statements of the alleged owner in disparagement of title.

3. REFORMATION OF INSTRUMENTS—*Mistake—Evidence.*—In a suit by one claiming under the husband against the heirs of his wife, to reform a joint deed to the husband and wife, on the ground that the wife's name was inserted in the deed by mistake, complainant testified that the wife had never claimed any interest in the subject of the grant, and one of the grantors and others testified substantially to the same effect.

   *Held:* That the evidence on behalf of complainant was not sufficient to meet that of defendants, as fortified by the significance of the deed itself.

4. HUSBAND AND WIFE—*Deed to Husband and Wife.*—Where no question of the rights of creditors is involved, even if the wife did not put any of her own money into the purchase of property jointly conveyed to her and her husband, there is no reason why her husband should not have given her the money, or paid it out for her to the grantors.

32

5. DEEDS—*Undelivered Deed—Enforcement as Contract—Case at Bar.*—An ·undelivered deed signed, sealed, and acknowledged, and identified in a letter from the grantor to grantees as a true expression of the contract between the parties, the consideration recited therein being conceded to have been correctly stated, and shown to have been fully paid, the grantees being in possession under a parol agreement of the property conveyed until the consideration was fully paid, and remaining in possession under the contract as expressed in the deed, if not good as a deed, because not delivered, was effectual as a contract and should be enforced.

6. FRAUDS, STATUTE OF—*Undelivered Deed as Memorandum.*—Whether, as a general proposition, an undelivered deed is sufficient as a memorandum or contract in writing to overcome the statute of frauds is a question upon which the authorities are not agreed. Perhaps the current of authority supports the negative of the general proposition. But where it satisfactorily appears from the proof that an undelivered deed expresses the terms of a previous verbal contract between the parties, such a deed is sufficient to take the contract out of the statute, and may properly be made the basis of specific performance.

·Appeal from a decree of the Circuit Court of Botetourt county. Decree for defendants. Complainant appeals.

*Affirmed.*

The opinion states the case.

*O. B. Harvey* and *Geo. A. Revercomb,* for the appellant.

*Haden & Haden,* for the appellees.

KELLY, P., delivered the opinion of the court.

This appeal involves the title to an undivided one-half interest in a tract of about 217 acres of land situate in Botetourt county. The litigation in its present form came about in the following manner:

G. P. Chiles, who is the appellant here, claiming to be

the owner of the whole tract, except two small undivided interests, brought a suit for partition against the alleged owners of those two interests. J. W. Bowyer and others, the appellees here, notified Chiles that they claimed an undivided one-half interest in the whole tract, and requested that he make them parties to the partition suit. This he declined to do and dismissed that proceeding.

Following this action on the part of Chiles, J. W. Bowyer and others brought an action of ejectment against him, seeking to recover a judgment for the undivided one-half interest claimed by them.

Thereupon Chiles brought the present suit in equity. In his bill he asserted title in himself as to the whole tract, except the two small undivided interests above mentioned, claiming under one Samuel K. Lemon. He further alleged that the defendants, Bowyer and others, claimed an undivided half interest in the land under Maud Lemon, wife of the said Samuel Lemon; that her title depended solely upon a deed of May 4, 1912, from Frank M. Lemon and Mattie E. Lemon, his wife, to Samuel K. Lemon and Maud, his wife; that Maud Lemon's name was inserted in that deed as a grantee by mistake; and, further, that the deed had never been delivered, and was for that reason null and void. The bill prayed that the deed be corrected, so as to vest the title to the entire tract in the heirs of Samuel Lemon; that the defendants be enjoined from the further prosecution of the action of ejectment; and for general relief.

When the cause came on to be finally heard on the bill, the answer of the defendants, and the proof, the court held that the deed of May 4, 1912, was not good as a conveyance for want of proper delivery, but that it represented the true contract between Frank Lemon and wife and Samuel Lemon and wife, and appointed a commissioner to convey one-half of the land to Chiles and others in

proper. proportion and the other half to defendants, Bowyer and others, in proper proportion. From that decree this appeal was allowed.

In 1884 Frank M. Lemon and Samuel Lemon, who were brothers, became joint owners of the land here involved, and on February 23, 1892, Samuel K. Lemon and Maud, his wife, conveyed to Frank Lemon "their one-half undivided interest" therein. The deed evidencing the latter transfer, as copied in the record before us, recites the consideration as being "the sum of $3,085.00, three thousand and eighty-five dollars; $585.00, five hundred and eighty-five dollars, a part of the first mentioned sum being due to the party of the second part upon a bond which has been surrendered to the party of the first part, and the sum of *twenty-five* dollars cash in hand, paid to the party of the first part by the party of the second part, the receipt of which is hereby acknowledged." (Italics supplied.) The original deed evidently acknowledged, or intended to acknowledge a cash payment of $2,500 instead of only $25. All parties concerned then and since have treated the transfer as a cash transaction.

The true reason actuating the parties in making the last named deed, and the real nature of the conveyance are matters about which the parties in this litigation differ widely.

On behalf of the appellant it is claimed that at the time the deed was made there was also a verbal contract whereby Frank Lemon sold to his brother, Samuel, the former's half interest in the farm; that the deed then made was merely a mortgage to secure the payment of the entire sum therein represented as purchase money; and that when Samuel Lemon paid to Frank Lemon the whole amount therein named, the latter would convey to the former the entire tract.

On the other hand the appellees claim that the deed rep-

resented a straight out sale, induced on Samuel Lemon's part by the fact that he was then in straightened financial circumstances, and that he needed and actually received from his brother, Frank, in money, the difference between the total recited consideration and the bond, to-wit, the sum of $2,500. It is further contended, however, on the part of the appellees that subsequent to the date of the deed the two brothers entered into a verbal contract whereby Frank Lemon and wife agreed to sell the whole farm to Samuel Lemon and Maud, his wife, in consideration of $2,000.

These respective theories and contentions on the part of the appellant and appellees as to the verbal agreement and understanding between Frank and Samuel Lemon for the reconveyance by the former to the latter assert novel and mysterious arrangements, and while they are respectively most confidently insisted upon by counsel as being established by the testimony of witnesses, when we come to consider the evidence outside of the deed itself, the most that can fairly be made of it is that there arose, at some time shortly before or shortly after the deed of February 23, 1892, some sort of a verbal understanding and agreement between the two brothers whereby, when certain payments were made to Frank by Samuel ($2,000 of which was to represent the price of the land), the whole tract was to be conveyed by Frank Lemon and wife either to Samuel Lemon alone, or to Samuel Lemon and his wife, Maud. Whether such conveyance was to be to one or both of the latter is a question which is left in uncertainty by the parol evidence. It may, however, be regarded as certain, and may be taken as the only reasonably satisfactory guide in deciding the case, that these brothers fully understood and trusted each other, and that what they actually did, as evidenced by the deed of May 4, 1912, was in accord with what they promised each other to do.

When the deed of February 23, 1892, was made, Samuel Lemon and wife were living on the farm in question in Botetourt county. Frank Lemon and wife were living on the farm which they owned in Alleghany county about sixteen miles distant. Samuel Lemon and wife continued to reside on the Botetourt farm, and payments were made by Samuel Lemon, either on his own behalf or on behalf of himself and as agent for his wife, from time to time in cattle and other things, until on or before May 4, 1912, these payments amounted to $1,388.71. As of that date Samuel Lemon and Mattie E. Lemon, his wife, made and acknowledged the deed to Frank M. Lemon and Maud E. Lemon, his wife, purporting to convey to them jointly the Botetourt farm "in consideration of the sum of two thousand ($2,000.00) dollars, $1,388.71 of which has been paid before the execution of this deed, receipt of which is hereby acknowledged, and six hundred and eleven dollars and twenty-nine cents ($611.29), the residue of the purchase money, payable within two years from this date, with interest from date," and a vendor's lien was retained in the deed to secure the unpaid purchase money. This deed, after its execution and acknowledgment, remained in Frank Lemon's possession and was found in his private papers after his death.

Maud Lemon died in 1914, Frank Lemon in 1915, and Samuel Lemon in 1916. Mattie E. Lemon survived, and was the sole legatee and devisee under the will of her husband.

After the death of Samuel Lemon, his nephew, G. P. Chiles, the appellant, who had been raised by him, obtained from all of the other heirs of Samuel Lemon, except the two having the small undivided interest above mentioned, conveyances for their interest in Samuel Lemon's estate. He also procured from Mrs. Mattie Lemon possession of the deed of May 4, 1912, paying her $1,000 to cover what

she claimed was a balance due her husband on the land and the price of a deed from Mrs. Mattie Lemon's two children, who were among the heirs of Samuel Lemon. Having thus obtained possession of the deed of May 4, 1912, he had the same forthwith recorded in the proper clerk's office. It may be added in this connection that while the appellant and Mrs. Mattie Lemon both testified that a part of the $1,000 was paid to her on account of what she claimed was a balance due on the land, the appellant himself further stated unequivocally that his Uncle Sam had paid for the land in full before the death of Frank Lemon. That this statement on his part is true seems to satisfactorily appear from the significant letter of April 13, 1915, from Frank Lemon to Samuel Lemon hereinafter set out.

Shortly after the recordation of the deed, G. P. Chiles, having failed to acquire the two small interests in Samuel Lemon's estate, brought the partition suit against them hereinbefore referred to, and in an order of publication therein the land was described as "being the same land which was conveyed by Frank M. Lemon and his wife by deed bearing date of May 4, 1912, to S. K. Lemon and Maud Lemon, his wife, and recorded in the clerk's office of Botetourt county, etc." This order of publication came to the attention of the heirs of Mrs. Maud Lemon, and they, together with Benjamin Haden and Benjamin Haden, Jr., their counsel, to whom about that time they conveyed one-half of their interest in the land, then for the first time set up a claim to half of the land, and asked to be made parties to the partition suit. Chiles declined to comply with this request and dismissed the suit. Then followed the ejectment suit as above stated, and the present chancery suit in which the circuit court entered the decree appealed from.

[1]. It is obvious that the determinative factor in this case is the deed of May 4, 1912, from Frank Lemon and

wife to Samuel Lemon and Maud, his wife. The effect of that deed is decisive. The complainant, appellant here, attacks it, and relies for relief against its terms upon two specific grounds. The first of these grounds is that the name of Maud Lemon, as a grantee, was inserted by mistake, and the second is that the deed was null and void for want of delivery. We will discuss these two propositions in their order. As to the first, the learned judge of the circuit court stated his opinion and finding as follows:

"1. That the plaintiff has failed to sustain the contention set up in his said bill that the deed dated May 4, 1912, between F. M. Lemon and M. E. Lemon, his wife, parties of the first part, and S. K. Lemon and Maud Lemon, his wife, parties of the second part, recorded in the clerk's office of this court, August 16, 1916, in Deed Book J, page 487, 'was executed by a mistake, and that it was not contemplated by any of the parties thereto at the time of its execution, that any right, title or interest of any nature should pass to the said Maud Lemon.' And the plaintiff is not entitled to have said deed reformed by striking therefrom the name of Maud Lemon as one of the grantees therein."

We concur in this conclusion. The deed was skilfully and carefully prepared by a competent lawyer acting under the instructions of Frank Lemon, who fully understood and had in mind the exact contract between him and his brother. It referred to "Samuel K. and Maud E. Lemon," as "the parties of the second part" twice in separate connections. It was plainly endorsed on the back "F. M. Lemon and wife to S. K. Lemon and wife." There is everything in the form and structure of the deed to indicate that it was deliberately and accurately written, and that all of the parties understood that the conveyance was made jointly to Samuel Lemon and wife. It was signed and sealed and acknowledged in this form, and kept in the possession of Frank Lemon for several years, and a short time before his death,

when it seems evident that all of the purchase money had been paid, he wrote to his brother Samuel, as follows, under date of April 13, 1915: "Dear Brother: Your letter to hand O. K. with check. If I can get over to see you any time soon I will bring the deed, and if you come over before I get there you can get it." This letter referred to the deed of May 4, 1912. There is no direct proof that Samuel Lemon ever saw this deed, but the circumstances and the relationship of the parties, as disclosed by the record, leave small room to doubt that he knew its contents and purport.

[2] There is evidence in the record to show that Samuel Lemon assured his wife that the deed had been made to them both, that he could get it at any time, and further, that he admitted to others that his wife had a half interest in the farm which was to be conveyed to her by his brother Frank. This evidence is clearly admissible because it details statements of the alleged owner in disparagement of the title to the one-half interest which appellant is here claiming under Samuel Lemon, and it is convincingly corroborated by the deed as actually made.

[3] We do not overlook the fact that the complainant testified that Maud Lemon had never claimed any interest in the land, and that Mattie E. Lemon and others testified substantially to the same effect, but after a careful review we are of opinion that the evidence on behalf of the appellant is not sufficient to meet that of the appellees as fortified by the significance of the deed itself.

It is strongly insisted on behalf of the appellant that the claim of the appellees rests upon a parol promise on the part of Samuel Lemon to give his wife a half interest in the land. The evidence does not support this contention. The land was owned and the contract to sell and convey it was made by Frank Lemon and wife. The question is whether the sale was to Samuel Lemon alone or to Samuel

33

Lemon and wife. There is verbal testimony tending to show that Samuel Lemon admitted and recognized the contractual interest of his wife—not that he promised to give her a part of his own interest; and this, as we have seen, is confirmed by the deed of May 4, 1912, naming her as a party interested jointly with her husband.

[4] No question of the rights of creditors is involved, and even if Maud Lemon did not put any money of her own into the purchase, there is no reason why her husband should not have given her the money, or paid it out for her to his brother. The simple question is, to whom did Frank Lemon, who owned the land, and received payment in full therefor, agree to sell it?

Summing up this branch of the case, the parol testimony is unsatisfactory and conflicting, but it is alleged in the bill and is shown by the evidence that Samuel and Frank Lemon were on the most intimate and cordial terms with each other, and we think, as doubtless the trial court thought, that the only satisfactory evidence as to what the parties really agreed upon is that which is disclosed by the deed itself.

Coming now to the second ground upon which the deed is attacked: The lower court held that it was never delivered, but was good and enforceable as a contract. The decree in this respect is as follows:

"2. That the plaintiff has failed to sustain the allegations of his bill as to the contract therein alleged to have been made between F. M. Lemon and S. K. Lemon concerning the purchase of tract of land in the bill mentioned; and is not entitled to have specific performance thereof as prayed for in his said bill.

"3. That the said deed of May 4, 1912, was never delivered by the grantors to the grantees or either of them, and for that reason is ineffectual to pass title for the land therein mentioned; but that said deed evidences the true

contract between the parties thereto respecting the land, and ought to be enforced."

[5]   Having already decided that the complainant failed to prove that the name of Maud Lemon was inserted in the deed by mistake, and therefore is not entitled to have the same reformed by striking out her name, it follows that if there was a delivery of the deed, the title to one-half of the land passed thereby to Maud Lemon, and is now 'vested in the appellees. If, on the other hand, it be conceded that, as contended by appellant and as decided by the court, the deed was not delivered, then the court was clearly right in holding that the undelivered deed was enforceable as a contract. It was signed, sealed and acknowledged, and was sufficiently recognized and identified in the letter referred to as a true expression of the contract between the parties. The consideration recited therein is conceded to have been correctly stated and is shown to have been fully paid before Frank Lemon's death. Samuel Lemon and wife were in possession of the land under the parol agreement from about 1892 until it was fully paid for, and undoubtedly remained in possession thereafter under the contract as expressed in the deed of May 4, 1912. Under these circumstances, if the deed was not good as such because not delivered, it was effectual as a contract, and ought to be enforced. *Bowles* v. *Woodson*, 6 Gratt. (47 Va.) 78, 88; *Parrill* v. *McKinley*, 9 Gratt. (50 Va.) 1, 7, 58 Am. Dec. 212; 1 Devlin on Deeds (3d ed.), sec. 273c.

[6] . Whether, as a general proposition, an undelivered deed is sufficient as a memorandum or contract in writing to overcome the statute of frauds, is a question upon which the authorities are not agreed. Perhaps the current of authority supports the negative of the general proposition. 29 Am. & Eng. Ency. L. (2d ed.) 855; 9 Cyc. 257. But we entertain no doubt that where, as in the two Virginia cases above cited, and as in this case, it satisfactorily ap-

pears from the proof that an undelivered deed expresses the terms of a previous verbal contract between the parties, such a deed is sufficient to take the contract out of the statute, and may properly be made the basis of specific performance.

Counsel for appellant do not question the soundness of the rule as announced in the *Bowles* and *Parrill Cases, supra,* but insist that these cases are not applicable here because there is nothing to show that Samuel K. Lemon ever saw the deed or ever knew anything about its contents. As already pointed out, however, the just and fair inference from the record is to the contrary.

For the reasons stated, the decree will be affirmed.

*Affirmed.*