### CHARLOTTE ROMMELL

*v.*

### MAY HAPPE et al.

[Decided December 6th, 1921.]

1. A deed direct from a husband to his wife passes an equitable estate in fee, and the wife is entitled to have the legal title from her husband's heirs.

2. To constitute delivery of a deed it is not necessary that it be actually handed over to the grantee, but it must satisfactorily appear, circumstantially, at least, if not from acts and express words, or both, that the grantor intended to part with the deed and pass title.

3. That an officer in whose presence a grantor executed a deed certified that the grantor acknowledged that he had signed, sealed and delivered it, is not conclusive evidence of delivery but may be rebutted by evidence showing that there was no actual delivery.

4. A deed in the nature of a testamentary devise is void, as contravening the statute of wills.

5. A grantor who delivers his executed deed to a third person with instructions to record it after his death, may thus part with all control over it and make it the property of the grantee, but if he merely changes the place of deposit from his hand or pocket to a box to which he alone has the right of access, he does not thereby part with possession or control of the deed, especially when he instructs the grantee to record it after his death if he did not do so before.

6. In a widow's suit to recover a half interest in fee alleged to have been conveyed to the plaintiff by a deed executed by the decedent, evidence *held* to show that the deed was not delivered nor intended to take effect in the grantor's lifetime.

On bill, &c.

*Mr. Ernest L. Quackenbush,* for the complainant.

*Messrs. McCarter & English,* for the defendants Lillian J. Bird and others.

*Mr. Charles C. Pilgrim,* for· the defendant Jesse R. Salmon, guardian *ad litem.*

FIELDER, V. C.

On August 29th, 1914, William H. Rommell was the owner in fee-simple in his own name of real property situate in the county of Somerset, and on or about that date, he executed a deed therefor to his wife, the complainant, and to his daughter, one of the defendants, Lillian J. Bird (then Lillian J. Rommell), and acknowledged the same ·in the presence of a proper official, which deed, unrecorded, he placed and kept in a box in the home at which he and the grantees resided and where it remained until after his death. He died intestate April 23d, 1917, leaving him surviving his wife, his daughter Lillian and eight other children, seven of whom are minors. The deed was placed on record by complainant June 8th, 1917. The bill of complaint herein names the nine children as defendants and prays a decree that by the said deed an undivided one-half of the premises passed to the complainant in fee-simple and that said children have no interest in such undivided part. A guardian *ad litem* was appointed for the seven infant defendants, who, on their behalf, filed an answer and counter-claim denying that the deed in question was delivered to the grantees and praying that it may be declared null and void, and that a decree be made that Rommell died seized in fee of the premises and that the same descended to his nine children as tenants in common, subject to an estate in dower in complainant. Lillian J. Bird and May Happe (the other adult child) are Rommell's children by a marriage prior to his marriage with complainant. An answer filed for them asserts that the deed in question was delivered to the grantees therein and that it was Rommell's intention thereby to con-

vey the premises in question to complainant and Lillian J. Bird as tenants in common.

The testimony tending to show the purpose Rommell had in mind when he executed the deed, and his intention with regard to its delivery, is meagre and comes solely from the lips of the grantees. It appears that Rommell, his wife, the defendant Lillian J. Bird and the infant children resided together on the premises in question. Lillian was sickly and it was thought she would not marry and would continue to reside with complainant and assist her in the care of the young children, and, therefore, Rommell desired that the complainant and Lillian should have his property. He prepared the deed himself and then told his wife and daughter that he proposed conveying the property to them and requested the former to accompany him to Bernardsville to have "his signature witnessed." He had the prepared deed in his possession when he left home for Bernardsville, and at the latter place he signed and acknowledged it and the officer affixed a certificate of acknowledgment, his wife being present throughout all these formalities. When the certificate of acknowledgment was completed, Rommell took the deed, put it in his pocket and carried it home. At no time after he had placed the deed in his pocket did his wife see it prior to his death. Upon arriving home he deposited the deed in a box in which he kept all his personal papers and placed the box in a drawer in a chiffonier in which nothing was kept except his clothing and other personal belongings and which stood in a bedroom occupied by him and his wife. She did not see him deposit the deed in the box, but he told her that day he had put it there and he said if anything should happen to him, it would be in the box, and that if he did not have it recorded before he died, to have it recorded immediately after his death. From that day he did not speak to her or to his daughter concerning the deed, and after his death his wife found it in the box, with other papers belonging to him, and about six weeks after his death she had the deed recorded. At no time did he say to either grantee, "This is the deed; I deliver it to you." or equivalent words, and neither of them ever had the deed in her possession for even an instant of time. Lillian had learned, through a conversation

25

she heard between her father and stepmother, that Rommell intended making a deed to them, and when he returned from Bernardsville he told her he had "made over the deed" to her and her stepmother, but he did not show it to her and she never saw it prior to her father's death. Lillian gave no testimony as to what was done with the deed after its execution or as to any statement made by her father tending to show delivery to her or to her stepmother.

The complainant would meet with no difficulty in enforcing her claim because the conveyance was from the husband direct to his wife. Such a deed would be held to pass an equitable estate in fee and she would be entitled to have the legal title from her husband's heirs. *Sipley* v. *Wass, 49 N. J. Eq. 463; Vought* v. *Vought, 50 N. J. Eq. 177; Cowdrey* v. *Cowdrey, 71 N. J. Eq. 353.* Her difficulty is that she has failed to show delivery of the deed by her husband to her or to the other grantee.

The elementary principles governing the question of delivery of a deed are well settled. It is not necessary that there should be an actual handing over of the instrument to constitute delivery. A deed may be delivered by words without acts, or by acts without words, or by both acts and words. A deed may be effectual to pass real estate though it be left in the custody of the grantor. It is necessary, however, that there should be something evincing the intent. It must satisfactorily appear, if not from acts and express words, yet from circumstances, at least, that there was an intention to part with the deed and of course pass the title. *Crawford* v. *Bertholf, 1 N. J. Eq. 458; Woodward* v. *Woodward, 8 N. J. Eq. 779; Cannon* v. *Cannon, 26 N. J. Eq. 316; Ruckman* v. *Ruckman, 33 N. J. Eq. 354; Hildebrand* v. *Willig, 64 N. J. Eq. 249; Rowley* v. *Bowyer, 75 N. J. Eq. 89; Abbe* v. *Donohue, 90 N. J. Eq. 597; Folly* v. *Vantuyl, 9 N. J. Law 153.*

The fact that the officer, in whose presence Rommell executed the deed, certified that the grantor acknowledged that he had signed, sealed and delivered it, is not conclusive evidence of delivery, but may be rebutted by other evidence showing that there was actually no delivery. It frequently happens that a grantor

will execute and acknowledge his deed several days in advance of the date on which he intends to make physical delivery of it, and delivery is not complete until the latter date arrives, when, by act or words, the deed passes from the grantor's possession, either actually or constructively, to the grantee. If, following his acknowledgment, Rommell had intended to record the deed immediately, but his purpose had been frustrated, there would be strong evidence from which a present delivery could be inferred, but it is not claimed that he was in ill health and in fear that he might die before he could get it to the county seat, or that he intended to record the deed so soon as it was possible or convenient to lodge it at the county clerk's office. I do not think that either of these thoughts could have been in his mind when he told his wife that if he failed to record the deed she should have it recorded immediately after his death, for he lived nearly three years after executing it. On the contrary, his intention appears to have been to continue his ownership of the property until such time as he might determine to record the deed in his lifetime, and should he decide, by withholding the deed from record, not to permit title to pass from himself to his wife and daughter in his lifetime, that they should not become the owners of the property until after his death. He said, in effect, that if he concluded at some later time to deliver the deed and give the property to his grantees in his lifetime, he would evidence such conclusion by recording the deed, and if he did not record it, there would be no delivery until after his death. If he had not intended to deliver the deed at some future time, he would have given it to his wife when she was with him at its execution and acknowledgment, or upon their return home. Evidently, the conditions upon which the deed was to become effective in his lifetime did not occur, and so he left it to his wife to record the deed after his death, with the thought probably in his mind (because he left no will) that the deed would take the place of a will. But if the deed was in the nature of a testamentary devise, it is void, for the reason that it contravenes our statute on wills. *Schlicher* v. *Keeler, 67 N. J. Eq. 635; Rowley* v. *Bowyer, supra; Abbe* v. *Donohue, supra.*

It is argued, on behalf of complainant that the execution and acknowledgment of the deed by the grantor, followed by notice thereof to the grantee and placing it in a box with instructions to the grantee to take possession of and record it after the grantor's death, is tantamount to delivering an executed deed by the grantor to a third person with instructions for its delivery to the grantee upon the grantor's death, which form of delivery to a third person, on the authority of *Rowley* v. *Bowyer, supra,* is good. But, says the learned vice-chancellor who decided that case, such delivery is good, unless accompanied by acts or words of the grantor which indicate a purpose on his part to reserve to himself control of the deed. In the instant case, the grantor made no delivery of the deed to anyone, and did not part with its possession or control from the time of its execution to the day of his death. It was a private paper, always kept by him with other private papers in a private place, and by no act or word had he indicated an intention to part with control of it and make it effective as a conveyance. He, undoubtedly, retained the right to destroy it and make other disposition of his real estate by deed or will. The learned vice-chancellor further said in the opening lines of his opinion in *Rowley* v. *Bowyer:* "Its [a deed's] delivery is a matter of intention and the acts and declarations of the grantor are evidences of his intention. It is not delivered unless or until it is the intention of the grantor to perfect the instrument and make it presently effective as a conveyance." A grantor who delivers his executed deed to a third person with instructions to record it after his death and without further reservations, may thus part with all control over the deed and make it the property of the grantee, but a grantor who merely changes the place of deposit of his executed deed from his hand or from his pocket to his box to which he alone has the right of access and from which he and no one else has the right to remove it, cannot be said to have parted with its possession or control, especially when he expressly reserves the right to decide when it shall become effective.

My conclusion is that the deed was not delivered and was not intended to take effect in the grantor's lifetime, but was to take effect after his death, and is therefore null and void and should

be set aside. The result is that Rommell died seized and intestate of the premises in question, which thereupon descended to his nine children as tenants in common, subject to the dower right of the complainant.