(No. 7118. December 22, 1943.)

MYRON D. JOHNSON, Public Administrator of Lincoln County, Idaho, as administrator of the estate of Grayce Pease, deceased, Respondent, v. GEORGE M. BROWN, Appellant.

[144 Pac. (2d) 198.]

W. L. Dunn for appellant.

Ralph R. Breshears for respondent.

GIVENS, J.—This action was brought under sec. 15-810, I.C.A.[1] by respondent, public administrator of Lincoln County, as administrator of the estate of Grayce Pease, deceased, to set aside and declare fraudulent and void, because of her asserted insolvency, known to the grantee, a deed executed by deceased to appellant.

Appellant testified Miss Pease owed him $535.68 at the time of her death. Miss Pease's sister-in-law, Mrs. Clyde Pease, testified she had overheard Miss Pease and Mr. Brown state such loans amounted to approximately $600. The afternoon of March 27, 1941, Miss Pease acknowledged a deed dated November 15, 1940, conveying the house in which she lived to appellant. The probate judge testified that after taking her acknowledgment he left her home, leaving the deed with Miss Pease or Mrs. Pease, who had witnessed the deed. Miss Pease committed suicide three-quarters of an hour thereafter.

Regarding the deed, Mrs. Pease testified:

"Q. Where was the deed and the other papers that you gave to Mr. Brown? Where did you get them from? A. I got them out of a box.

"Q. And did your sister-in-law give them to you, or how did they get in that box? A. She had me put the box away for her.

"Q. She gave you the deed? A. She didn't give me the deed.

---

[1] "15-810. Action to set aside fraudulent transfer by decedent.— When there is a deficiency of assets in the hands of an executor or administrator, and when the decedent, in his lifetime, has conveyed any real estate, or any rights or interests therein, with intent to defraud his creditors, or to avoid any right, debt or duty of any person, or has so conveyed such estate that by law the deeds or conveyances are void as against the creditors, the executor or administrator must commence and prosecute to final judgment any proper action for the recovery of the same; and may recover for the benefit of the creditors all such real estate so fraudulently conveyed; and may also, for the benefit of the creditors, sue and recover all goods, chattels, rights or credits which have been so conveyed by the decedent in his lifetime, whatever may have been the manner of such fraudulent conveyance."

"Q. What did she tell you? A. She didn't tell me. I didn't know it was a deed in the box or anything until we run across the papers and other personal stuff in this box.

"Q. Then you took them out? A. Yes, they were in an envelope with Mr. Brown's name on them.
&ast; &ast; &ast;

"Q. You gave that to George Brown? A. Yes."

Mrs. Pease gave the envelope containing the deed (an ordinary warranty deed) and a letter[2] to appellant the night Miss Pease died, not knowing the deed was in the envelope until opened by appellant in her presence. Appellant did not see the deed until it was given to him after Miss Pease's death, though she had told him she had drawn the deed but that it hadn't been notarized.

---

[2]"Dear George:

"I have a feeling that I sure am being double crossed by Dave & others in league with him, but whatever they may say or tell, I have always been on the square and I hope some day they will be forgiven. I guess I was crazy to send that combination to Dave, but I am so much more ill than any one knows that I did not think what might result. I have always tried to help every one in any way I could. I guess if I had been a little more hard boiled, I wouldn't have had to take the jolts that I did from the Commissioners and public. If I could have had those last reports, I would have had every thing closed up and transferred and would have been working in Boise before the 1st of February, but the disappointment in losing that good job, sure took all the heart out of me.

"I know you have always been more than just a friend to me and I had hoped for happy times this year, but I just have a feeling that I am not going to get well. George will you please let the folks live in the house awhile, until they can get some place to put the things? Poor old Clyde & Jim, they sure have had tough luck too, but if Clyde gets that job, they will be all right, and I am leaving a little insurance, which will cover my expense, when they get it.

"Dear old Pal, I hope you will get to feeling better,—and just know I loved you so much, and appreciate how good you have always been to me.

"That pain in my chest gets worse all the time. I think the doctor was trying to cheer me up when he said it wasn't serious. George talk to the kids, so they won't feel too bitter toward some people, and know, dear, that I am honest,

Much Love, Grayce."

Deceased gave appellant the pass-book of the Federal Savings and Loan Association, March 26, 1941, when, at her instance, he made four payments on the mortgage covering the property in question to avoid a foreclosure action. The following assignment appears on the back cover of the pass book:

"Transfer of Borrower's Membership

"The undersigned has sold the property securing the loan referred to in this loan account book and requests the association to transfer the membership to: George M. Brown, Shoshone, Idaho the purchaser of such property, who has assumed the obligation of the loan, it being understood that the transfer of such membership shall not, however, release the undersigned from obligation on the loan.

This 15th day of Nov., 1940

Signature　　Grayce Pease·

In the presence of: Pearl Pease
* * *"

A small slip of paper pinned to the last sheet in the book contained this notation: "George sign where the blue mark is," and appellant's signature appears where the mark is, over the date "31st Day of March." Below that the loan company wrote, "Transfer entered of record 4-16, 1941."

The value of the property was placed at from $800 to $1050. After Miss Pease's death appellant improved the property to the extent of $275. The balance due on the mortgage on the date Miss Pease died was $584.92.

There were no assets of the estate, and creditors' claims of $5,966.29 were filed.

The trial court submitted the following interrogatories to a jury, all of which were answered in the negative:

"Was the conveyance to George M. Brown by warranty deed, recorded April 12, 1941, in Book 36 of Deeds at page 618 thereof, records of Lincoln County, Idaho, made by Grayce Pease, deceased, during her lifetime with the intent on the part of said Grayce Pease to defraud creditors of the said Grayce Pease, or to avoid any right, debt or duty of said Grayce Pease?

Did the grantee, George M. Brown, participate in consummating the conveyance with the intention of hindering, delaying and defrauding the creditors of Grayce Pease?

Did George Brown know Grayce Pease was insolvent at the time he received the deed in question?

Was the deed in question executed by Grayce Pease without a valuable consideration?"

Appellant's assignments as to the inadequacy of allegations of fraud are of no significance because the court thus found in his favor thereon.

■ During the course of the trial respondent amended paragraph 8 of his complaint (theretofore sounding only in fraud) by adding: "that Grayce Pease [deceased] did not during her lifetime, either by word or acts or both, deliver said warranty deed to George M. Brown," which amendment is deemed denied. (*McDougald v. Argonaut Land & Development Co.*, 117 Cal. 87, 48 P. 1021; *Glougie v. Glougie*, 174 Cal. 126, 162 P. 118; *Bank of Italy v. Johnscn*, 200 Cal. 1, 251 P. 784; *Richards v. Tavares*, 105 Cal. App. 261, 287 P. 552; *McKelvy v. Martin*, 118 Cal. App. 691, 5 P. (2d) 652; *Rabbit v. Atkinson*, 44 Cal. App. (2d) 752, 113 P. (2d) 14.) The parties themselves and the trial court evidently proceeded upon such assumption, thereby pre ert-ing an issue of fact which the court found adversely to respondent, as follows:

"VIII. That the grantor, Grayce Pease, did not part with the possession of or in any way relinquish control over said warranty deed during her lifetime, and that said Grayce Pease did not during her lifetime, either by words or acts or both, deliver said warranty deed to George M. Brown.

"IX. That said warranty deed dated November 15, 1940, and recorded on April 12, 1941, in Book 36 of Deeds at page 618 thereof, records of Lincoln County, Idaho, is null and void from the beginning and that the plaintiff is entitled to judgment declaring said deed to be void ab initio and of no force or effect."

■ Appellant assigns as error the amendment and that such issue was not presented to the jury. Appellant did not ask for further time to meet such issue raised by the amendment and has not shown that he was in any way prejudiced by the amendment, which was largely within the discretion of the court. (I.C.A. 5-905; *Small v. Harrington*, 10 Ida. 499, 79 .P. 461; *Cady v. Keller*, 28 Ida. 368, 154 P. 629; *Swanson v. Olsen*, 38 Ida. 24, 220 P. 407; *Hoy v. Anderson*, 39 Ida. 430, 227 P. 1058; *Idaho Trust Co. v.*

*Eastman,* 43 Ida. 142, 249 P. 890; *Marysville Development Co. v. Marotz,* 44 Ida. 469, 258 P. 180; *Todd v. City of Hailey,* 45 Ida. 175, 260 P. 1092; *Radermacher v. Eckert,* 63 Ida. 531, 123 P. (2d) 426; *Hall v. Boise Payette Lumber Co.,* 63 Ida. 686, 125 P. (2d) 311.)

It is conceded the action is equitable, and the jury was acting only in an advisory capacity. (*Pritchard v. Butler,* 4 Ida. 518, 43 P. 73; *Brady v. Yost,* 6 Ida. 273, 55 P. 542; *Curtis v. Kirkpatrick,* 9 Ida. 629, 75 P. 760; *Rees v. Gorham,* 30 Ida. 207, 164 P. 88; *Johnson v. Nichels,* 48 Ida. 654, 284 P. 840; *Tomita v. Johnson,* 49 Ida. 643, 290 P. 395.) Consequently, even though the court indicated such issue would be presented to the jury and it was not, the court alone had the ultimate right to dispose thereof. (*Tomita v. Johnson,* supra.)

While members of this court did not agree as to the factual conclusion to be reached in *Cell v. Drake,* 61 Ida. 299, 100 P. (2d) 949, they did agree, following *Flynn v. Flynn,* 17 Ida. 147, 104 P. 1030, that in order for a deed to be effective it must be irrevocably delivered, i.e., with irrevocable intent to divest the grantor of title, though temporary title or possession be retained. Such delivery may be actual or constructive.

The case at bar differs in its facts from *Gonzaga University v. Masini,* 42 Ida. 660, 249 P. 93, in the particulars pointed out in *Cell v. Drake,* supra, and also in the further very material respect that the grantee in that case had no knowledge or information of the execution of the deed or intention of the grantor to convey the property until after the death of the grantor; also, in the present case the grantor personally immediately rendered it impossible for her to recall the deed.

*Orris v. Whipple,* 224 Iowa 1157, 280 N.W. 617, 129 A.L.R. 1, is in theory and application of the appropriate and pertinent rule strongly in favor of respondent. On the other hand, under the able and exhaustive analysis therein of the Iowa cases, which, with the exception of the three not followed, rather reflect the general attitude of courts on this subject, under the analysis of the evidence herein, we believe, is distinguishable, and the effect of the decision is to ultimately support appellant. The exhaustive annotation following that case in 129 A.L.R. contains (pages 11-33, 48-9), we believe, the bulk, if not all, of the cases extant at that time upon the sufficiency of delivery without

manual tradition to become an effective conveyance. It is sufficient to refer to such citations and the analysis given by the annotator without further elaboration herein. The deducible rule is that, even though the grantor retain physical possession of the deed, if surrounding and attendant facts and circumstances are sufficient to clearly show an irrevocable intent to transfer the title, and there are some physical acts supporting such intention and fixing with definiteness symbolical or constructive delivery, the requirements for the transfer of the title have been complied with. We approve and do not go beyond the following statement in *Snidow v. First National Bank,* 178 Va. 239, 16 S.E. (2d) 385, at 388:

"Of course, an intention to give, unaccompanied by a delivery, is ineffectual to constitute a gift. From this sound rule, we are unwilling to depart. If the intention to give is attended by such words or acts of the donor, which, under the circumstances and relations between the parties, indicate that the donor surrendered the power of dominion and control over the subject matter, then a delivery sufficient in law is made."

"And the prevailing view seems to be that the same rule is applicable to all deeds beneficial to the grantee, where the evidence shows that the grantor has parted with all right of control of the deed and intends that it shall operate presently to pass title. (1 Devlin on Deeds, secs. 286-289.) In such cases, while the manual possession of the deed remains with the grantor after the constructive delivery has taken place, he has parted with the right of possession and with the right of dominion and control of the deed; and, although he has the physical opportunity and the power thereafter to destroy the instrument, that is immaterial, since he has not the right to do so; and such action would, indeed, be of no effect, since the deed would have become effectual upon the instant of the constructive delivery, and would have passed the title beyond the power of the grantor to recall it and reinvest himself with it. It is in this sense that the authorities lay down the universal rule that one essential element of every delivery of a deed is that the grantor must have parted with the dominion and control of it. (8 R.C.L., sec. 53, p. 985; 1 Devlin on Deeds, secs. 260a, 261.)

"Precisely what acts of a grantor will be sufficient to evidence the constructive delivery just mentioned in all

cases it would be, as aforesaid, impossible to state; * * *"
(*Mumpower v. Castle*, 128 Va. 1, 104 S.E. 706, at 709-10.)

Attention is further called to the early annotations along this line in 54 L.R.A. 865 and 53 Am. St. Rep. at 537.

"Where one had the mental power to alter his intention and the physical power to destroy a deed in his possession, and dies without doing either, there is but little reason for saying that this deed shall be inoperative simply because during life he might have done that which he did not do. It is much more consonant with reason to determine the effect of the deed by the intention existing up to the time of death than to refuse to give it that effect, because the intention might have been changed. [Citing authorities.]" (*McKemey v. Ketchum*, 188 Iowa 1081, 175 N.W. 325, at 326.)

"The elementary principles governing the question of delivery of a deed are well settled. It is not necessary that there should be an actual handing over of the instrument to constitute delivery. A deed may be delivered by words without acts, or by acts without words, or by both acts and words. A deed may be effectual to pass real estate, though it be left in the custody of the grantor. It is necessary, however, that there should be something evincing the intent. It must satisfactorily appear, if not from acts and express words, yet from circumstances at least, that there was an intention to part with the deed and of course pass the title. [Citing authorities.]" *Rommell v. Happe*, 93 N.J. Eq. 383, 115 A. 906, at 908.)

*Alford v. Henderson*, 237 Ala. 27, 185 So. 368, though there holding that because the parties holding under the deed had the affirmative and therefore the burden of proof, and had not sustained it, nevertheless recognized that facts and circumstances other than manual tradition of the deed were sufficient to show delivery, stating:

"Although the actual custody of the instrument has not passed from the hands of the grantor, any words or acts or both clearly showing an intent that the deed be presently effective, become the deed of the grantee, subject to his or her control, and is held by the grantor or a third person as a mere agent or custodian of the grantee, evidence an effectual delivery. But where the grantor reserves the locus poenitentiae, that is to say, not a mere custody, but a right to withdraw from an incompleted transaction, re-

serves control over the document in his own right, there is no delivery."

See also 18 Am. Jur. 510, sec. 128, and 512, sec. 131; 26 C.J.S. 237, sec. 42a.

■ The evidence in favor of respondent's position is: that the deed was found among the grantor's papers and remained in her physical possession, that there had been no manual delivery by her to the grantee or to anyone else with instructions to deliver the deed to him; that no specific instructions in writing were left by the grantor requesting or outlining such procedure, i.e., delivery; that the deed was dated November 15, 1940, but was not acknowledged until March 27, 1941; that it was possible for the grantor to have acknowledged the deed when made and· delivery could have been made up to the time of her death manually to the grantee. While the grantor had mentioned the deed and her intention to transfer the property to both respondent and Mrs. Pease, during all this time she did not manually deliver or complete the deed. While there may have been other influences actuating her, the inference is at least legitimate that it was not until the day the deed was acknowledged that she had definitely and finally decided upon the transfer.

On the other hand, in support of appellant, the making of the deed itself is some indication that the grantor contemplated immediate or subsequent transfer of the title. Her statements to Mrs. Pease and to the grantee strengthen the conclusion this was her mental attitude. The transfer in the loan company's pass book, even though made November 15, 1940, coincident with the date of the deed, and prior to the date of acknowledgment, was a declaration, over her own signature, and which was acted upon by the loan association and grantee by the payment of some of the installments, that title had been transferred, is strong indication that in her own mind she was in process, at least, between the date of the deed and the acknowledgment, of consummating a transfer of the property to the grantee. The letter left by her and which, though undated, and there is no evidence to show exactly when it was written, contains internal implications that it was written not long before her death, carries well-nigh the inescapable thought that she considered the property had been transferred, vide, this portion: "George will you please let the folks live in the house awhile, until they can get some place to put

the things?" If her then idea was that she retained the right to revoke the transfer, there would be no occasion for her to request permission for her folks to live in the property, but such request is fully consonant with the idea in her mind that title had passed, that she so understood and had so intended.

We have read and fully considered *Lawn v. Donovan*, 2 Kan. A. 404, 42 P. 744, and freely concede that the reasoning therein is apt, pertinent, and somewhat persuasive. (After diligent search this is the only suicide case we have found.) On the other hand, grantor's self-destruction within three-quarters of an hour of the time she made the acknowledgment, while perhaps induced by fear of conclusive detection of her embezzlement (theretofore disclosed in connection with her former official position as county treasurer) and possible apprehension that the sheriff, who was entering the house at the time she fired the fatal shot, was coming to arrest her, nevertheless had the effect of irrevocably preventing her from thereafter (in the light of our present scientific knowledge) revoking the deed, or indicating the retained right to exercise further dominion thereover. Therefore, it would seem that the transfer in the pass-book, the letter, and the time relation of the suicide to the acknowledgment, inevitably lead to the conclusion that prior to her death she had formed an irrevocable intent to transfer this property to the grantee, which, under the doctrine of constructive delivery, is adequate and governs.

It is well-nigh conceded that if the grantor had given the deed to her sister and said, "Give this to Mr. Brown," or words to that effect, from the concomitant context of the other surrounding circumstances delivery would have been sufficiently established. Instead of the spoken words we have the deed in an envelope with Mr. Brown's name on it. How is this less compelling than the spoken word? Indeed, it is more enduring because the implied direction does not depend upon fallible human memory or give opportunity for deceit. Delivery is merely a symbol indicating, as interpreted by the courts, complete and fixed relinquishment of title by the grantor to the grantee. The deed itself is merely evidence of the grant, the grant itself being an incorporeal muniment. The delivery is merely an outward manifestation of an inward intent necessary to transform and give body and substance to what otherwise would be merely subjective and not objective.

Can it be said in the instant case that the grantor retained, under the facts and circumstances disclosed by the record, or intended to retain, anything more than the mere, naked, physical possession of the deed? It would seem not.

The sum of the mortgage and debt, which, so far as the record discloses, she owed appellant, was approximately the value of the property at the time of the transfer. Therefore, there was not only good but adequate consideration for the transfer. The increased value of the property was because, apparently, of the improvements placed thereon by appellant after he came into possession thereof. Though we do not mean to hold that consideration without delivery would necessarily uphold a conveyance, it is a factor which operates in support of appellant's rights.

We note also, but do not decide, that an undelivered deed has been enforced as a contract to convey. (*Chiles v. Bowyer*, 127 Va. 249, 103 S.E. 619.)

The judgment is accordingly reversed and remanded with instructions to enter a decision in compliance herewith. Costs awarded to appellant.

Holden, C.J., and Ailshie, Budge, and Dunlap, JJ., concur.