# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 37946

| | | |
|---|---|---|
| **MICHAEL SCOTT MACLAY,** | ) | **Twin Falls, November 2011 Term** |
| | ) | |
| **Petitioner-Appellant,** | ) | **2012 Opinion No. 25** |
| | ) | |
| **v.** | ) | **Filed: January 26, 2012** |
| | ) | |
| **IDAHO REAL ESTATE COMMISSION,** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **Respondent.** | ) | |

_____

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Kathryn A. Sticklen, District Judge.

The decision of the district court is <u>affirmed</u>. Costs are awarded to respondent.

Michael S. Maclay, Spokane Valley, Washington, appellant *pro se*.

Kirtlan G. Naylor, Boise, for respondent.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

Michael Maclay ("Maclay") appeals the district court's decision affirming the Idaho Real Estate Commission's ("Commission") Final Order, which revoked Maclay's Idaho real estate license and assessed him a $5,000 fine. Maclay is alleged to have used another person's broker's license to carry on Help-U-Sell List 4 Less Realty ("Help-U-Sell"), prepared incomplete brokerage representation agreements without either a price provision or a conspicuous beginning and end date, advertised listed properties without a listing broker's licensed business name, used a new brokerage name prior to its approval by the Commission, provided misleading advertising to the public, accepted real estate fees not paid through a broker for the performance of acts requiring a real estate license, engaged in a continued or flagrant course of misrepresentation, failed to account for or remit any funds coming in his possession belonging to a brokerage, engaged in dishonorable dealings and recklessness or gross negligence, and acted as a real estate

1

salesperson without a license. Maclay contends that the Commission's decision is contrary to I.C. § 67-5279(3) because it is not supported by substantial evidence on the record as a whole; exceeds the Commission's statutory authority; is made upon unlawful procedure; violates constitutional or statutory provisions; and is arbitrary, capricious, and an abuse of discretion. Maclay also contends that his substantial rights were prejudiced contrary to I.C. § 67-5279(3). Because the Commission's decision is supported by substantial evidence and the other issues under I.C. § 67-5279(3) were waived, this Court affirms the Commission's decision.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Michael Maclay has been a licensed real estate agent in Idaho since February 1, 2000. On March 10, 2006, he became licensed with broker John Runkle ("Runkle") at RealTeam Real Estate Center, Inc. ("RealTeam").[1] While working with RealTeam, Maclay arranged with Idaho property owners to pay up-front marketing fees for their properties to be listed on the Multiple Listing Service ("MLS").[2] Some of these fees were made payable directly to Maclay.[3] Runkle, the licensed broker of RealTeam, had a conversation with Maclay regarding his up-front marketing fee strategy. During their conversation, Runkle told Maclay that before Maclay collected any up-front marketing fees, he needed to receive a letter of approval from the Commission and get his clients to sign an addendum.

Following their conversation, Runkle received a complaint from Maclay's client, Aaron Klennert ("Klennert"), claiming that he paid an up-front marketing fee to Maclay. Runkle did not find Klennert's listing file. Therefore, the money paid by Klennert was not paid through the RealTeam brokerage. Citing Maclay's inability to conform to office policies, Runkle terminated

---

[1] While working as a sales agent for RealTeam, Maclay was also a sales agent for Family First Real Estate Group, a Spokane, Washington real estate company.

[2] Maclay accepted flat fees from sellers who only wanted flat fee access into the MLS. These fees were generally noted on exclusive seller representation agreements as an additional marketing fee to the brokerage fee. Two days prior to working with RealTeam, Maclay designated himself as agent for an Exclusive Seller Representation Agreement with Mark Wanner and Juanita Sanchez. The agreement contains no beginning or end date. It provides for brokerage fees and an up-front marketing fee, as well. Maclay did not sign the agreement and does not remember whether any up-front marketing fee was ever paid by Mark Wanner and Juanita Sanchez.

[3] Payment of the $295 to $500 up-front marketing fee entailed that Maclay would visit the property, engage in a comparative market analysis, appraise the property, offer an option of having advertisements in the local media, list the property on the multiple listing service, show the property to prospective buyers, and provide a real estate sign in their yard. The signs read as follows: "RealTeam, Family First Real Estate Group." If the seller produced a purchaser, the seller would not pay a 2-3% brokerage fee. If Maclay produced a purchaser, the seller would pay the brokerage fee.

Maclay's employment on or about October 30, 2006, inactivated Maclay's license with the Commission on February 12, 2007, and filed a formal complaint ("Complaint") with the Commission. The Complaint alleges that Maclay took payments directly from clients, misrepresented RealTeam, and purposefully failed to turn in files and fees to the RealTeam brokerage. Runkle subsequently received several other complaints[4] from Maclay's up-front marketing fee clients. Runkle later learned that Maclay had been utilizing his up-front marketing fee even before he joined RealTeam.

After his termination at RealTeam, Maclay became associated with owner/broker George Kucera ("Kucera") at Help-U-Sell as a sales associate on January 12, 2007. Maclay's license was activated on March 1, 2007. Kucera was a licensed broker in Idaho and Washington. Kucera's Help-U-Sell franchise was dually licensed in Idaho and Washington and had offices in both states. Maclay worked in the Idaho office. Apparently, at some point, Kucera wrote a letter approving of Maclay's up-front marketing fee strategy.

On October 8, 2007, Kucera passed away. A qualified broker was not appointed to carry on the Help-U-Sell franchise in Idaho, so Help-U-Sell's Idaho license was terminated on October 31, 2007. As yet, Maclay has not obtained an Idaho broker's license. Maclay's license, thereafter, was placed on inactive status.

Maclay claims that Kucera left the Help-U-Sell franchise to him by a "transition letter" or "letter of assignment" allegedly signed by either Kucera[5] or Kucera's son, who represented Kucera's estate after his death. Maclay also asserts that he was appointed as interim broker for the Help-U-Sell office in Washington. On November 14, 2007, Maclay filed a document with the Idaho Secretary of State to remove Kucera's name from the assumed business name of "Help-U-Sell/List 4 Less Realty." The national franchise for Help-U-Sell ("National Franchise") denied that Maclay was the owner of Kucera's Help-U-Sell franchise. The National Franchise later issued a formal cease and desist letter to Maclay.

---

[4] Specifically, the Commission determined that Maclay prepared five seller representation agreements from March 8, 2006 to September 23, 2006 for flat fees ranging from $299 to $500, which were paid directly to Maclay, not the RealTeam brokerage. Maclay failed to complete and maintain files on these properties at the RealTeam brokerage. On some of the agreements, the agreement term was left blank and unsigned by Maclay or the sellers. Runkle accepted and initialed several of the agreements.

[5] The Commission noted that the letter Kucera signed was dated October 9, 2007. The Commission questioned how Kucera could write such a letter when he died on October 8, 2007.

Maclay recognizes that Help-U-Sell does not exist in Idaho "from a state licensing perspective." Regardless, he stated that he continued to do business in Idaho through Kucera's Help-U-Sell franchise's website. Maclay asserts that his activities with regard to the website are not subject to Idaho real estate law because he was only offering "for sale by owner marketing."

Two days before Help-U-Sell's Idaho license was terminated, Alann Krivor signed two exclusive seller representation agreements for two properties located in Idaho, listing a brokerage fee. John Dohm ("Dohm"), Maclay's assistant, designated himself and Maclay as the agents and initialed that the term of the agreement commenced on November 26, 2007. On November 28, 2007, Krivor's properties were activated on the MLS. On the MLS, Maclay was named as the listing agent, even though Maclay was not licensed under a broker on that date, and Kirbi Swanson ("Swanson") and Treaty Rock Realty, Inc. ("Treaty Rock") were named as the listing broker and brokerage, respectively, even though the data sheets for these properties list Help-U-Sell as the listing brokerage.

Swanson is a licensed broker and the owner of Treaty Rock. She previously agreed to hire Maclay and Dohm as sales agents after the termination of Help-U-Sell's Idaho license. Maclay's and Dohm's term of employment with Treaty Rock was for one to one and a half months and was to commence on December 2007. As a condition to his hiring, Maclay was given permission by Swanson to list Krivor's properties with Treaty Rock when Maclay's employment started.

Maclay denies listing Krivor's properties prior to his employment with Treaty Rock even though he is named as the listing agent. He also denies having knowledge that any paperwork had been completed with respect to these properties, until he later became licensed with Treaty Rock. Maclay's signature and handwriting do not appear on any of these documents, but Swanson confirmed that these listings were brought by Maclay to Treaty Rock.

On December 5, 2007, Maclay's and Dohm's employment with Treaty Rock began. While employed by Treaty Rock, Maclay advertised Idaho properties on the Help-U-Sell website, noting a general affiliation between Treaty Rock and Help-U-Sell. He also advertised Krivor's properties and two other Treaty Rock listings, one in Post Falls, Idaho, and the other in Hayden, Idaho, on the Help-U-Sell website. The website indicates the listings as Help-U-Sell's listings. It describes Maclay as interim broker. The website displayed Treaty Rock's logo, as well. There is no affiliation between the two companies recognized by the Commission, the

4

National Franchise, Swanson, or Treaty Rock. Swanson contends that Maclay arranged at least one up-front marketing fee during his employment with Treaty Rock that she is aware of, which was paid to the brokerage.

Upon learning of Maclay's Help-U-Sell website, Swanson informed Commission staff that Maclay was improperly advertising Treaty Rock listings on the Help-U-Sell website on December 28, 2007. On December 31, 2007, Swanson told Commission staff that she talked to Maclay about his Help-U-Sell website. Swanson related that Maclay told her that he could legally run a for-sale-by-owner company with up-front marketing fees.

Thereafter, Swanson terminated Maclay's license on January 31, 2008. Maclay remained on inactive status while the Commission reviewed his case. As of January 11, 2008, Treaty Rock's logo and listings were still on Help-U-Sell's website.[6]

On August 28, 2008, the Idaho Real Estate Commission staff filed a Complaint against Maclay. On November 5, 2008, the Commission and the designated hearing officer held a hearing with respect to the Complaint. The hearing officer issued her Findings of Fact, Conclusions of Law and Recommended Order on November 21, 2008. On March 19, 2009, the Idaho Real Estate Commission issued its Final Order, adopting the hearing officer's findings of fact, holding that Maclay violated I.C. §§ 54-2002, 2040(5), 2050(1)(a), 2050(1)(c), 2053(2), 2053(4), 2054(9), 2060(2), 2060(3), 2060(11), 2060(12), and 2065. The Commission then revoked Maclay's Idaho real estate license and ordered Maclay to pay a civil fine of $5,000. Maclay then filed his Petition for Judicial Review pursuant to I.A.R. 11 on April 16, 2009. In its appellate capacity, the district court affirmed the Commission's decision on June 28, 2010. Thereafter, Maclay filed his Notice of Appeal on August 6, 2010.

### III. ISSUES ON APPEAL

1.     Whether the Commission's decision violated I.C. § 67-5279(3)?
2.     Whether the Commission's decision violated Maclay's substantial rights?

### IV. STANDARD OF REVIEW

Where a district court acts in its appellate capacity pursuant to the Idaho Administrative Procedure Act, this Court independently reviews the agency record. *Cooper v. Bd. of Prof'l*

---

[6] The Help-U-Sell website listed the "Help-U-Sell Team" as Jon Dohm, Licensed Assistant; Scott Maclay, Top Ten Agent; and George Kucera, Owner/Broker/Attorney. Maclay describes himself as the interim broker in Washington, affiliated with Treaty Rock in Idaho.

*Discipline of Idaho State Bd. of Med.*, 134 Idaho 449, 454, 4 P.3d 561, 566 (2000). "This Court exercises free review over the trial court's conclusions of law to determine if the trial court correctly stated the principles of law and if the legal conclusions are supported by the facts as found." *Alcohol Beverage Control v. Boyd*, 148 Idaho 944, 947, 231 P.3d 1041, 1044 (2010). This Court defers to the agency's findings of fact "unless those findings are clearly erroneous and unsupported by evidence in the record." *Cooper*, 134 Idaho at 454, 4 P.3d at 566. "This Court may not substitute its judgment for that of the agency as to the weight of the evidence on factual matters." *See id.*; *see also* I.C. § 67-5279(1).

An agency's actions are afforded a strong presumption of validity. *Cooper*, 134 Idaho at 454, 4 P.3d at 566. However, the agency's action may be set aside "if the agency's findings, conclusions, or decisions (a) violate constitutional or statutory provisions; (b) exceed the agency's statutory authority; (c) are made upon unlawful procedure; (d) are not supported by substantial evidence on the record as a whole; or (e) are arbitrary, capricious, or an abuse of discretion." *See id.*; I.C. § 67-5279(3). In addition, an agency action will be affirmed "unless substantial rights of the appellant have been prejudiced." I.C. § 67-5279(4).

## V. ANALYSIS

### A.     The Commission's Decision Does Not Violate I.C. § 67-5279(3)

Maclay contends that the Idaho Real Estate Commission's decision is contrary to I.C. § 67-5279(3) because it is not supported by substantial evidence on the record as a whole; exceeds the agency's statutory authority; is made upon unlawful procedure; violates constitutional or statutory provisions; and is arbitrary, capricious, and an abuse of discretion. For the reasons that follow, the Commission's decision did not violate I.C. § 67-5279(3).

#### 1.     *The Commission's Decision is Supported by Substantial Evidence*

Maclay asks this Court to re-weigh all the evidence and make its own finding of fact to determine whether there is substantial evidence to support the Commission's decision. As discussed in the previous section, this type of review is inappropriate.

##### a.     *There Is Substantial Evidence that Maclay Engaged in Unauthorized Use of a Broker's License*

Maclay contends that he did not violate I.C. § 54-2040(5) because he is an interim broker in Washington and legally listed Idaho properties on the Help-U-Sell website. He further claims that he did not engage in broker activities listed in I.C. § 54-2038 and that he made a good faith effort to comply with I.C. § 54-2040(5).

6

Idaho Code section 54-2040(5) prohibits "a salesperson . . . [from using] . . . another person's broker's license, whether for compensation or not, to establish or carry on a business for which a broker's license is required, nor to manage and control the office, except as allowed by sections 54-2016(4) and 54-2039(1), Idaho Code." Upon the death of a broker, "the licensed entity shall appoint and designate a qualified individual as designated broker in the manner and within the time required in section 54-2039, Idaho Code, or [the licensed entity] shall cease to be licensed." I.C. § 54-2057(1). A qualified individual is a broker properly licensed in Idaho. I.C. § 54-2016(1)(a).

Maclay concedes that he is not a qualified broker in Idaho. Though, he does assert that he was, at times, a licensed sales agent. Whether Maclay made a good faith effort to receive a broker's license in Idaho and whether he is an interim broker in Washington are of no concern to this Court. Because there was no qualified broker appointed after Kucera's death, Help-U-Sell's license was terminated by the Commission. Maclay does not contest that he continued to carry on the business of Help-U-Sell by entering into seller representation agreements, listing properties on the MLS for up-front marketing fees, showing the properties to prospective buyers, and attempting to sell properties for a separate broker's commission. Idaho Code section 54-2038 outlines the responsibilities of a broker as being the supervision and control over the licensees of a brokerage. As the facts suggest, Maclay assumed this role, after Kucera's death, in his capacity as the alleged owner of Help-U-Sell. Thus, there is substantial evidence that Maclay unlawfully continued to carry-on the business of Help-U-Sell.

> b. *There Is Substantial Evidence that Maclay Prepared Seller Representation Agreements Without Conspicuous and Definite Beginning and Expiration Dates and Without Sufficient Price Terms*

Maclay suggests that even though he acted as a sales agent and participated in preparing the seller representation agreements, Runkle is primarily responsible. Because Runkle is actually licensed as a broker in Idaho, Maclay asserts that Runkle bears the ultimate responsibility for ensuring that Maclay's seller representation agreements conformed to Idaho law. Regardless, Maclay suggests that he should not be punished because no one was harmed by his up-front marketing fees.

Although brokers are ultimately responsible for the contents of seller representation agreements, sales agents who enter into such agreements on behalf of a broker are also accountable. *See* I.C. §§ 54-2002, 2038(1)(a)–(c). A seller representation agreement must

7

contain "[c]onspicuous and definite beginning and expiration dates" as well as the "[p]rice and terms . . . ." I.C. § 54-2050(1)(a), (c).

Maclay does not contest that he acted as sales agent for the Jackson, Smith, and Wanner Seller Representation Agreements.[7] He also does not contest that these agreements were missing the required duration and price terms under I.C. § 54-2050(1)(a), (c). Maclay merely invites this Court to shift the blame to Runkle because he is a broker and failed in his duty to supervise Maclay. Runkle is not a party to this action. Any misconduct on Runkle's part relates to a separate matter between Runkle and the Idaho Real Estate Commission. His actions have no bearing on this Court's holding. What Maclay fails to fully realize is that sales agents are also obligated to properly prepare seller representation agreements in accordance with I.C. §§ 54-2002 and 2038(1)(a)–(c). Maclay had the responsibility as a sales agent to ensure that the Jackson, Smith, and Wanner Seller Representation Agreements conformed to Idaho law. Maclay's contention that the sellers were not harmed is irrelevant because he violated the statute. None of the statutes require harm as an element. Instead, they provide that violators are subject to discipline. Therefore, there is substantial evidence to support the Commission's holding that Maclay violated I.C. § 54-2050(1)(a), (c).

> c. *There Is Substantial Evidence that Maclay Provided Misleading Advertisements of Treaty Rock Listings on the Help-U-Sell Website, Listed Properties Without a Broker's Name, and Used a Business Name Prior to the Approval of the Commission*

Maclay asserts that he did not violate I.C. § 54-2053(2), (4) or engage in misrepresentation. He contends that he fully disclosed that the listings on the Help-U-Sell website were Treaty Rock listings. He further claims that he disclosed on the website that Help-U-Sell was affiliated with Treaty Rock. Maclay gleans an affiliation between Help-U-Sell and Treaty Rock from his contentions that he was a licensed sales agent for Treaty Rock and the alleged owner of Kucera's Help-U-Sell franchise.

Idaho Code section 54-2053(1) provides that either a licensed Idaho broker or a licensed Idaho sales agent, authorized by a licensed Idaho broker, may advertise Idaho real estate or place

---

[7] The Wanner/Sanchez Seller Representation Agreement was discussed in footnote two. The Smith Seller Representation Agreement was signed by the sellers, but not by a broker or by Maclay. The agreement term on the IAR Form Re-16, dated September 23, 2006, was left blank and unsigned. The property was placed on the MLS. Maclay was described as the listing agent. The $499 up-front marketing fee was paid directly to Maclay. The Jackson Seller Representation Agreement contained a term from March 24, 2006 to July 31, 2006. The agreement did not indicate a sales price, but the MLS listing showed a list price of $439,900. Jackson paid the $295 flat fee directly to Maclay.

8

a sign on Idaho property. Such listings must contain the licensed broker's business name and not be misleading to the public by creating a "distinct probability that such information, [taken as a whole], will deceive the persons whom it is intended to influence." I.C. § 54-2053(2), (4). "A new business name shall not be used or shown in advertising unless and until a proper notice of change in the business name has been approved by the commission." I.C. § 54-2053(2).

Maclay does not contest that he listed Idaho properties on the Help-U-Sell website without a licensed broker's name. He also does not challenge his use of the Help-U-Sell name without approval by the Commission. He merely contends that he did nothing wrong because he was an affiliate of Treaty Rock. Neither Treaty Rock, the National Franchise, nor the Commission recognized an affiliation between Treaty Rock and Help-U-Sell. Regardless, Help-U-Sell was terminated when it lost its license on October 31, 2007. Therefore, there is substantial evidence that Maclay used a new business name prior to approval by the Commission, listed properties without listing a licensed broker's name, and misled the public by including Treaty Rock listings on the Help-U-Sell website. The fact that the listings were disclosed as Treaty Rock listings does not change this Court's holding.

### d. There Is Substantial Evidence that Maclay Accepted Real Estate Fees Not Paid Through a Brokerage for Performance of Acts Requiring a Broker's License

Maclay suggests that he did not violate I.C. § 54-2054(9) because he made a good faith effort to comply with the statute by utilizing an Idaho real estate attorney's opinion about the legality of his up-front marketing scheme and sought the opinion of the Idaho Real Estate Commission.

"All fees must be paid through [a] broker. No sales associate shall accept any commission, compensation or fee for the performance of any acts requiring a real estate license from any person except the real estate broker with whom the sales associate is licensed." I.C. § 54-2054(9). "No person shall engage in the business or act in the capacity of real estate broker or real estate salesperson in this state without an active Idaho real estate license therefore. Unless exempted from this chapter, any single act described within the definitions of 'real estate broker' or 'real estate salesperson' shall be sufficient to constitute 'engaging in the business' within the meaning of this chapter." I.C. § 54-2002. "Real estate broker" includes:

> Any person other than a real estate salesperson, who, directly or indirectly, while acting for another, for compensation or a promise or an expectation thereof, engages in

9

any of the following: sells, lists, buys, or negotiates, or offers to sell, list, buy or negotiate the purchase, sale, option or exchange of real estate or any interest therein or business opportunity or interest therein for others . . . .

I.C. § 54-2004(35)(a).

Here, Maclay engaged in the business of real estate under I.C. §§ 54-2002 and 2004(35)(a) by entering into seller representation agreements, advertising properties, listing properties, showing properties to prospective buyers, and placing signs on real property for flat fees. The fees paid directly to Maclay were required to be paid through a brokerage. I.C. § 54-2054(9). Therefore, there is substantial evidence that Maclay accepted fees not paid through a brokerage for activities requiring a broker's license.

> *e. There Is Substantial Evidence that Maclay Failed to Account for Property Belonging to a Brokerage and Engaged in Continued Misrepresentation, Negligence, Recklessness, and Dishonest Dealings*

Maclay contends that he did not engage in continued misrepresentation, negligence, recklessness, or dishonest dealings. He further asserts that nowhere in these statutes is gross negligence, reckless misconduct, misrepresentations, false promises, or dishonorable dealings clearly defined. Finally, he contends that the Washington Real Estate Commission finds no merit in the Idaho Real Estate Commission's decision, presumably because the Washington Real Estate Commission has not filed a complaint against him concerning his conduct in this matter.

Idaho Code section 54-2060 provides that any person performing or attempting to perform any act of misconduct requiring an Idaho real estate broker's or salesperson's license is subject to discipline, "regardless of whether the act was for the person's own account or in his capacity as broker or salesperson . . . ." The acts constituting misconduct include:

(2) Engaging in a continued or flagrant course of misrepresentation or making of false promises, whether done personally or through agents or salespersons;

(3) Failure to account for or remit any property, real or personal, or moneys coming into the person's possession which belong to another;

(11) Any other conduct whether of the same or a different character than hereinabove specified which constitutes dishonest or dishonorable dealings;

(12) Gross negligence or reckless conduct in a regulated real estate transaction. Conduct is grossly negligent or reckless if, when taken as a whole, it is conduct which substantially fails to meet the generally accepted standard of care in the practice of real estate in Idaho.

I.C. § 54-2060(2)–(3), (11)–(12).

10

Maclay's conduct with regard to his continued use of the Help-U-Sell brokerage after its license was terminated and the Help-U-Sell website supports the Commission's finding that Maclay acted dishonorably or dishonestly and engaged in continued or flagrant misrepresentation. Furthermore, Maclay does not contest that he was paid directly by his clients for his flat fee services and did not remit those monies to the RealTeam or Treaty Rock brokerages. Maclay's preparation of the seller representation agreements while unlicensed, creation of incomplete seller representation agreements, and listing of Krivor's properties while unlicensed all establish gross negligence or reckless conduct.

In regard to Maclay's contention that the Washington Real Estate Commission has not filed a formal complaint regarding his conduct in this matter, such an argument relates to a separate matter between Maclay and the Washington Real Estate Commission, which is not binding on this Court.

### f. There Is Substantial Evidence to Support the $5,000 Fine Assessed to Maclay

Idaho Code section 54-2002 asserts that "[n]o person shall engage in the business or act in the capacity of real estate broker or real estate salesperson in this state without an active Idaho real estate license therefore." Idaho Code section 54-2065 assesses a civil penalty of up to $5,000 for any person acting as a real estate broker or real estate salesperson.

Maclay only contends, without evidence, that the $5,000 fine imposed by the Commission was utilized in a vindictive, self-serving manner. The failure to support an alleged error with argument and authority is deemed a waiver of the issue. *Bach v. Bagley*, 148 Idaho 784, 790–91, 229 P.3d 1146, 1152–53 (2010). Regardless, because of the reasons described in the previous sections, the $5,000 fine assessed to Maclay was supported by substantial evidence.

### 2. This Court Will Not Address the Other Issues that Maclay Raises Under I.C. § 67-5279(3) Because He Does Not Provide Adequate Argument or Authority to Support Them

Maclay offers no argument or factual support beside broad allegations that the Commission's decision was an abuse of discretion, without authority, self-serving, vindictive, ignorant, and illogical. The failure to support an alleged error with argument and authority is deemed a waiver of the issue. *Id*. This Court "will not consider assignments of error not supported by argument and authority in the opening brief." *See Hogg v. Wolske*, 142 Idaho 549, 559, 130 P.3d 1087, 1097 (2006); *see also* I.A.R. 35(a)(6) ("The argument shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor,

with citations to the authorities, statutes and parts of the transcript and record relied upon."). Therefore, these issues are disregarded by this Court. Further, this Court does not need to address whether these issues were properly preserved for appeal.

**B.      Maclay's Substantial Rights Were Not Violated**

Because the Commission's decision was supported by substantial evidence, Maclay's substantial rights were not violated.

## VI. CONCLUSION

This Court holds that the Commission's decision was supported by substantial and competent evidence and Maclay's substantial rights were not violated. The other issues under I.C. § 67-5279(3) were not supported by argument or authority in Maclay's opening brief. Therefore, those issues are waived. Neither party requested attorney's fees. Costs are awarded to the Commission.

Chief Justice BURDICK, Justices EISMANN, J. JONES and HORTON CONCUR.