130 P.3d 1087

Luann HOGG, as personal representative of the Estate of Verda A. Anderson; John Anderson and The William A. Anderson Testamentary Trust, Plaintiffs–Respondents,

v.

Kelvin WOLSKE, Estate of Patricia Phyllis Wolske, Estate of Fred Wolske, The Silver Star Nevada Trust, Defendants–Appellants.

No. 30818.

Supreme Court of Idaho, Boise, January 2006 Term.

Feb. 22, 2006.

Rice & Rice and Garry L. Gilman, Boise, for appellants. James E. Rice argued.

Evans Keane, Boise, for respondents. Jed W. Manwaring argued.

EISMANN, Justice.

This is an appeal from a judgment quieting title to certain real property, awarding special damages on a claim for slander of title based upon the filing of a void quitclaim deed, and rejecting the defendants' contention that a deed and contract to reconvey the property executed by their predecessors in interest constituted a mortgage. We affirm the district court and award the respondents attorney fees on appeal.

## I. FACTS AND PROCEDURAL HISTORY

The central issue in this case is whether a deed and contract to reconvey real property constituted a mortgage. Fred and Phyllis Wolske and Vanness and Verda Anderson entered into a written agreement (Agreement) dated March 22, 1975. The Agreement provided that the Wolskes would convey by warranty deed certain real property to the Andersons in exchange for $141,991. It also provided that if the Wolskes paid certain sums, the Andersons would reconvey the property back to them. On March 22, 1975, the Wolskes executed a warranty deed

conveying the real property to the Andersons. The Andersons paid the $141,991 and took possession of the real property.

The documents for the transaction had been prepared by the Wolskes' attorney, who has retired from practicing law and did not represent the defendants in this case. The Andersons were not represented by counsel at the time. The Wolskes' attorney recorded the warranty deed conveying the property to the Andersons, but kept the original in his file. He had also prepared a quitclaim deed which the Andersons executed. The Agreement and quitclaim deed were to be placed in escrow at a local bank, but the attorney did not set up the escrow account because the Wolskes did not pay him the fee necessary to do so.

In January 1976, the Wolskes failed to make the first payment of principal due in order to repurchase the property. The Andersons retained counsel, who on May 3, 1976, gave the Wolskes a written sixty-day notice of default as provided in the Agreement. The Wolskes did not cure the default, although in December of that year they did tender a check for an annual principal payment. The Andersons rejected the payment because it did not include accrued interest. In subsequent correspondence, the Andersons' attorney also referred to the check as being "not sufficient at the bank." The Wolskes made no further attempts to perform under the Agreement.

In 1977 or 1978, Fred Wolske and his attorney had a falling out, and the attorney gave Wolske all of the files he maintained while representing him. In doing so, the attorney inadvertently gave Wolske the quitclaim deed that had been executed by the Andersons.

Fred Wolske died on October 7, 1997. From 1975 until his death, he made no claim to the real property. In his will, Fred named his son Kelvin as the personal representative of his estate. While going through his father's records, Kelvin found the quitclaim deed. After talking with his mother, Kelvin recorded it on October 24, 1997. He also found and recorded a quitclaim deed executed by the Bohrers who had entered into a similar transaction with his parents with respect to other real property. In response to the Bohrers' demands, Kelvin and his mother executed a quitclaim deed conveying that property back to the Bohrers along with affidavits stating that the quitclaim deed executed by the Bohrers should not have been recorded, that the Wolskes had not paid any consideration for the property, and that it was recorded in error and without authority.

Over the years, the Andersons sold portions of the property they had purchased from the Wolskes. After the Andersons died, their successors learned of the quitclaim deed recorded by Kelvin when they attempted to sell the remaining property. The sale fell through because the title report disclosed the quitclaim deed as a cloud on the title to the property.

On May 21, 1998, the Estate of Vanness Anderson and the Estate of Verda Anderson (Respondents) filed this action against Kelvin Wolske, Phyllis Wolske, and the Estate of Fred Wolske seeking quiet title to the property,[1] damages against Phyllis Wolske and Fred Wolske's Estate for breach of warranty of title, and damages against Phyllis Wolske, Kelvin Wolske, and Fred Wolske's Estate for slander of title. They later filed an amended complaint adding a claim that Kelvin Wolske's recording of the quitclaim deed constituted a fraudulent transfer. The amended complaint also added as defendants the Silver Star Nevada Trust and the Wolskes' five other children, all of whom along with Kelvin were alleged to be heirs of Fred Wolske. The five other Wolske children were later either dismissed after filing a disclaimer of any interest in the real property or given a release of liability after judgment had been

---

1. The Respondents also named as defendants to the quiet title action certain judgment creditors of the Wolskes whose recorded judgments would constitute liens upon any real property in the Wolskes' names. The judgment creditors later either filed disclaimers of any interest in the property or recorded releases of their judgment liens, and they were dismissed from the litigation.

entered, and they are not parties to this appeal.

Kelvin Wolske, Phyllis Wolske, and Fred Wolske's Estate answered and filed a counterclaim, seeking quiet title to the real property. The counterclaim alleged that the warranty deed and Agreement constituted a mortgage, that the statute of limitations had run on any action to foreclose the mortgage, and that the counterclaimants were entitled to have title to the real property quieted in them. They also alleged title to the real property based upon the quitclaim deed recorded by Kelvin. Phyllis Wolske died while the case was pending, and her estate was substituted for her as a defendant-counterclaimant.

The matter was tried to the district court without a jury. The court found that the warranty deed and Agreement did not constitute a mortgage. It also found that the claim that the deed and contract of reconveyance constituted a mortgage was barred by laches and by the doctrine of adverse possession. It quieted title to the property in the Andersons' successors in interest, declared void the quitclaim deed recorded by Kelvin Wolske, and awarded the Respondents the sum of $94,359.37, representing the attorney fees and costs incurred in quieting title to the property. The Wolskes' Estates, Kelvin Wolske, and the Silver Star Nevada Trust then timely appealed.

## II. ISSUES ON APPEAL

A. Did the district court err in failing to find that the warranty deed and contract of reconveyance were not intended by the parties to constitute a mortgage?

B. Did the district court err in finding that there was a valid delivery of the warranty deed from the Wolskes to the Andersons?

C. Did the district court err in awarding damages for slander of title against Kelvin Wolske?

D. Did the district court err in awarding costs and attorney fees against the Silver Star Nevada Trust?

E. Did the district court err in awarding damages for slander of title against the Wolskes' Estates and the Silver Star Nevada Trust?

F. Are Respondents entitled to an award of attorney fees on appeal pursuant to Idaho Code § 12–121?

## III. ANALYSIS

**A. Did the District Court Err in Failing to Find that the Warranty Deed and Contract of Reconveyance Were Not Intended by the Parties to Constitute a Mortgage?**

The first issue we must address is the standard of review. Kelvin Wolske, the Estate of Fred Wolske, the Estate of Phyllis Wolske, and the Silver Star Nevada Trust (Appellants) argue that we should conduct a *de novo* review of the record and make our own findings of fact. They rely upon *Jaussaud v. Samuels*, 58 Idaho 191, 201, 71 P.2d 426, 431 (1937), in which the Court held that an appellate court need not give deference to the findings of fact by a trial court where the evidence below was documentary. Even assuming that we would apply that rule of review, *see Shelton v. Diamond Int'l Corp.*, 108 Idaho 935, 703 P.2d 699 (1985), the evidence in this case was not entirely documentary.

▮▮▮ Appellants contend that the warranty deed and Agreement constituted a mortgage. "Every transfer of an interest in property other than in trust to secure the performance of any obligation of the trustor or other person named in the trust instrument, made only as a security for the performance of another act, is to be deemed a mortgage." I.C. § 45–904. "[P]arol evidence is admissible for the purpose of showing that a conveyance of land, absolute in form, is a mortgage." *Credit Bureau of Preston v. Sleight*, 92 Idaho 210, 216, 440 P.2d 143, 149 (1968); I.C. § 45–905. "A fee simple title is presumed to be intended to pass by a grant of real property unless it appears from the grant that a lesser estate was intended." I.C. § 55–604. "It is a well-settled rule of law that where one asserts that a deed shall be given a different con-

struction from that clearly appearing on its face, claiming that it is a mortgage, he must show by clear and convincing evidence that a mortgage, and not a sale with the right to repurchase, was intended." *Shaner v. Rathdrum State Bank*, 29 Idaho 576, 583, 161 P. 90, 92 (1916). "The question as to whether the evidence is clear and convincing, that a conveyance absolute on its face is in reality a mortgage, is primarily for the trial court." *Gem–Valley Ranches, Inc. v. Small*, 90 Idaho 354, 363, 411 P.2d 943, 948 (1966). "A trial court's findings of fact will not be set aside on appeal unless they are clearly erroneous." *Camp v. East Fork Ditch Co., Ltd.*, 137 Idaho 850, 856, 55 P.3d 304, 310 (2002); Idaho R. Civ. P. 52(a).

■ The deed executed by the Wolskes was absolute on its face. It stated,

FOR VALUE RECEIVED, FRED H. WOLSKE and PHYLLIS E. WOSLKE, husband and wife, the Grantors, do hereby grant, bargain, sell and convey unto VAN-NESS ANDERSON and VERDA A. ANDERSON, husband and wife, the Grantees, the following described premises in Ada County, Idaho,.... TO HAVE AND TO HOLD the said premises with their appurtenances unto the said Grantees, their heirs and assigns forever.

In exchange for the deed, the Andersons paid the Wolskes $141,991. A portion of that payment was apparently made by canceling a pre-existing debt. The Agreement recited that the parties had entered into a contract dated June 1, 1974, and that on June 5, 1974, the Andersons had paid the Wolskes $56,757. The Agreement provided that it replaced the 1974 agreement, which was declared null and void, and that the Andersons' prior payment of the $56,757 was considered part of the $141,991 they were to pay under the Agreement. The Agreement also required the Andersons to reconvey the real property to the Wolskes at the end of seven years if: (a) the Andersons obtained a loan in the sum of $141,991, secured by a mortgage on the real property, and the Wolskes paid off the loan; or (b) the Andersons did not mortgage the property and the Wolskes paid the Andersons $141,991 in seven equal annual payments, plus annual interest payments of 10%.

■ The form of the transaction in this case, a deed and contract for reconveyance, does not necessarily show an intent that the deed was given as security for an obligation. "A person may purchase lands, and at the same time contract to reconvey them for a certain sum, without the intention of either party that the transaction should in effect be a mortgage." *Parks v. Mulledy*, 49 Idaho 546, 551, 290 P. 205, 207 (1930). Likewise, the fact that the Wolskes apparently owed the Andersons money as a result of a prior transaction does not require a finding that the transaction was a mortgage. "It is not material whether the consideration is an antecedent debt, or a consideration then paid, or consists partly of both." *Id.*

When evaluating the evidence in this case, the district court considered the factors listed by this Court in *Dickens v. Heston*, 53 Idaho 91, 21 P.2d 905 (1933). Those factors are: (a) the existence of a debt to be secured, (b) the satisfaction or survival of the debt, (c) the previous negotiations of the parties, (d) the inadequacy of the price paid, (e) the financial condition of the grantor, and (f) the intention of the parties.

The district court found that the 1975 transaction between the Wolskes and the Andersons did not secure any debt. The Wolskes could re-acquire the property by paying certain sums to the Andersons, but they were not obligated to make those payments.

Because both the Andersons and the Wolskes had died prior to trial, there was no evidence of their previous negotiations. The attorney who drafted the Agreement did not talk with the Andersons, and he could not remember much of anything he may have been told by Fred Wolske.

The $141,991 paid by the Andersons was the fair market value of the real property at the time of the transaction. The district court found that fact was indicative of an outright conveyance.

The district court found that the evidence of the Wolskes' financial condition was inconclusive. The Agreement recited that the

Wolskes needed money "to retire certain encumbrances on said real property and to develop other real properties owned by them." That recitation does not show that the Wolskes were severely pressed for money at the time they entered into the transaction. The Appellants have not pointed to any evidence indicating that the Andersons pressured the Wolskes into entering into this form of transaction and that the Wolskes acquiesced because of their necessitous condition. In fact, the Agreement recited that the Wolskes wanted the money "to develop other real properties owned by them." It indicates that they believed developing those other properties would be more lucrative than farming the real property at issue.

■ With respect to the parties' intents, the district court found that their subsequent conduct indicated they intended the transaction to be a sale. After the failed attempt in 1976 to tender the first payment to re-acquire the real property, the Wolskes never again attempted to do anything to re-acquire the property. From the execution of the Agreement and warranty deed on March 22, 1975, until Fred Wolske's death over twenty-two years later on October 7, 1997, the Wolskes did not assert any claim to the property, nor did they attempt to regain possession of it. The Andersons received all crops, rents and profits from the real property, they paid all real estate taxes assessed against the property, and they paid the fees to file water right claims in the Snake River Basin Adjudication. As the district court stated, "For twenty-one years following the failed attempted payments, Wolskes were strangers to the property in the same manner as any non-owner would be." It is significant that the Wolskes relinquished possession of the real property when they entered into the transaction with the Andersons. A mortgagor of real property typically does not part with possession of the property. The district court also found that the Wolskes never objected to the Andersons' transfers of portions of the real property to others. As we stated in *Parks v. Mulledy,* 49 Idaho 546, 551, 290 P. 205, 207 (1930), "The intention of

the parties at the time an agreement to execute a deed is consummated is determinative of whether the title is irrevocably transferred, or the conveyance is merely as security for the payment of a debt or performance of an obligation."

■ After considering all of these factors, the district court found that Appellants had failed to prove by clear and convincing evidence that the warranty deed conveying the real property to the Andersons was intended by the parties to be security for the performance of an obligation. Appellants dispute that finding, pointing to parts of the Agreement that they contend show an intent to create a mortgage. Specifically, it recites that the Wolskes "are in need of financing," that the Andersons were willing "to advance . . . the necessary financing," and that the Wolskes would execute a warranty deed conveying the property to the Andersons "as a security transaction in order to enable [the Andersons] to obtain a loan on said real property." [2] The district court considered those provisions, but found that other provisions of the Agreement and the factors listed in *Dickens v. Heston,* 53 Idaho 91, 21 P.2d 905 (1933), weighed against the transaction being security for the performance of an obligation. The Agreement was drafted by the Wolskes' attorney, and the Andersons were not represented by counsel in the transaction. The district court could certainly consider that fact when deciding what weight to give the use of the word "advance" and the one ambiguous reference to "a security transaction." The district court was required to consider the understanding and intention of both parties to the transaction, grantees as well as grantors. *Bergen v. Johnson,* 21 Idaho 619, 626, 123 P. 484, 487 (1912).

Appellants also contend that other provisions of the Agreement are inconsistent with an outright sale. The Agreement provided that during its seven-year term, the Wolskes would pay one-half of the real property taxes; the Andersons would not permit any liens to attach to the property; the Andersons would farm the property utilizing

2. The Andersons did not obtain a loan on the property. Had they done so, the Agreement provided that the Wolskes could regain the property by paying off the loan.

good farming practices and would use it only for agricultural purposes; and the Andersons would not assign the Agreement without the Wolskes' consent. Although these provisions are inconsistent with an outright sale, they are not inconsistent with a sale and contract for reconveyance. If the Wolskes chose to repurchase the property, it is not unusual that they would want it back in substantially the same condition it was in when they sold it.

Appellants have not shown that the district court erred. Its conclusion that Appellants failed to prove by clear and convincing evidence that the warranty deed and Agreement were a mortgage is well reasoned and supported by the evidence. In fact, Appellants do not contend that the district court's findings in this regard are clearly erroneous. Their appeal of this issue is based solely upon their hope that we would reweigh the evidence ourselves and come to a different conclusion. That is not the appropriate standard for reviewing a trial court's findings of fact. Rule 52(a) states, "Findings of fact shall not be set aside unless clearly erroneous."

Because we have upheld the district court on this ground, we need not address the other grounds upon which it quieted title to the real property in the Respondents.

**B. Did the District Court Err in Finding that There Was a Valid Delivery of the Warranty Deed from the Wolskes to the Andersons?**

■ Appellants contend that the warranty deed conveying the real property from the Wolskes to the Andersons is void for lack of delivery. They argue that there was no delivery because the Andersons never had actual possession of the deed.

■ "Delivery is merely a symbol indicating, as interpreted by the courts, complete and fixed relinquishment of title by the grantor to the grantee." *Johnson v. Brown,* 65 Idaho 359, 369, 144 P.2d 198, 203 (1943). "Such delivery may be actual or constructive." *Id.* at 365, 144 P.2d at 201; *Hartley v. Stibor,* 96 Idaho 157, 525 P.2d 352 (1974). In *Johnson v. Brown,* we stated as follows:

The deducible rule is that, even though the grantor retain physical possession of the deed, if surrounding and attendant facts and circumstances are sufficient to clearly show an irrevocable intent to transfer the title, and there are some physical acts supporting such intention and fixing with definiteness symbolical or constructive delivery, the requirements for the transfer of the title have been complied with.

*Id.* at 366, 144 P.2d at 201. The trial court in *Johnson v. Brown* found there had been no delivery of a deed because the grantor never parted with possession of the deed prior to her death. This Court reversed, holding that the evidence showed there was a constructive delivery of the deed.

■ Relying upon our opinion in *Johnson v. Brown,* the district court in this case found that there was constructive delivery of the warranty deed. The district court's finding of constructive delivery is well-supported by the facts that the Andersons paid and the Wolskes accepted the $141,991 purchase price; the Wolskes executed the warranty deed and their attorney had it recorded; the Andersons took possession of the real property; and the Wolskes thereafter did not make any claim to any interest in the real property. Appellants do not challenge the district court's finding that there was a constructive delivery of the deed. Rather, they argue at length that there was no manual delivery of the deed to the Andersons. The absence of actual delivery does not disprove constructive delivery. *Johnson v. Brown,* 65 Idaho 359, 144 P.2d 198 (1943).

**C. Did the District Court Err in Awarding Damages for Slander of Title Against Kelvin Wolske?**

■ "Slander of title requires proof of four elements: (1) publication of a slanderous statement; (2) its falsity; (3) malice; and (4) resulting special damages." *McPheters v. Maile,* 138 Idaho 391, 395, 64 P.3d 317, 321 (2003). The district court found that the quitclaim deed was a false, slanderous statement. Not only did the Wolskes not pay the sums required to regain the real property, but there was no valid delivery of the deed. It was supposed to have been placed in es-

crow and was inadvertently given to Fred Wolske by his attorney without the Andersons' knowledge or consent. Appellants do not dispute the finding that the recordation of the quitclaim deed constituted publication of a slanderous and false statement. They challenge only the district court's finding that Kelvin acted with malice in recording the quitclaim deed.

 "Malice has been generally defined by Idaho courts as a reckless disregard for the truth or falsity of a statement." *Weaver v. Stafford,* 134 Idaho 691, 701, 8 P.3d 1234, 1244 (2000). "An action will not lie where a statement in slander of title, although false, was made in good faith with probable cause for believing it." *Id.*

The district court found that Kelvin acted with malice when he recorded the quitclaim deed. The court noted Kelvin's testimony that he recorded the deed to "ruffle the feathers" of others who had an interest in the real property. The court found that Kelvin's intent was to vex, harass, or annoy those having prior recorded title. The court also found that Kelvin acted with reckless disregard of the truth. After his father's death, Kelvin found in his father's papers a recorded warranty deed conveying the real property to the Andersons and an unrecorded, 22–year–old quitclaim deed conveying it from the Andersons back to his parents. Kelvin farmed with his father and knew that his parents had not possessed the real property since 1976. He also knew of the 1976 dispute between the Andersons and his parents regarding nonpayment and that his parents thereafter did not make any claim to the real property during his father's lifetime. The district court also found that from reviewing his parents' files, Kelvin knew or reasonably should have known that they did not make any of the payments required to regain the real property. Finally, the district court found that before recording the quitclaim deed Kelvin did not investigate the property's status. In fact, Kelvin admitted that he did not want to do any investigation before recording the deed.

Appellants contend that the facts do not support a finding of malice. They point to Kelvin's testimony that he talked with his attorney before recording the quitclaim deed. Although he so testified, he was careful not to disclose what advice he was given regarding the deed, and therefore the record does not reflect whether his actions were consistent with that advice. Appellants also point to the district court's denial of the Respondents' motions for summary judgment and argue such denial is inconsistent with the later finding that Kelvin was not acting in good faith with probable cause for believing his claim was valid.

We need not address this issue. The district court awarded as damages for slander of title the sum of $94,359.37, which was the amount the Respondents incurred as costs and attorney fees in the quiet title action. The district court also awarded Respondents the identical sum as court costs and attorney fees awardable to the prevailing party. The district court stated, "All costs and attorney fees claimed by Plaintiffs are granted with the exception of costs and fees relating to the water rights issue. Costs and fees are otherwise awarded in their entirety on three grounds: special damages for slander of title, I.C. § 12–120 and I.C. § 12–121."

 The district court awarded one sum of money under three separate theories. In their opening brief, Appellants challenged only the award as special damages. They did not list as an assignment of error, or argue, that the district court erred in awarding attorney fees under Idaho Code §§ 12–120 or 12–121. They did argue the issue in their reply brief in conjunction with addressing Respondents' request for attorney fees on appeal. "In order to be considered by this Court, the appellant is required to identify legal issues and provide authorities supporting the arguments in the opening brief. I.A.R. 35. A reviewing court looks to the initial brief on appeal for the issues presented on appeal." *Myers v. Workmen's Auto. Ins. Co.,* 140 Idaho 495, 508, 95 P.3d 977, 990 (2004). *Accord Suitts v. Nix,* 141 Idaho 706, 708, 117 P.3d 120, 122 (2005) ("A reviewing court looks only to the initial brief on appeal for the issues presented because those are the arguments and authority to which the respondent has an opportunity to respond in the respondent's brief."); *State v. Raude-*

*baugh,* 124 Idaho 758, 864 P.2d 596 (1993). Because Appellants did not challenge the award of attorney fees under Idaho Code §§ 12–120 and 12–121 in their opening brief, they have not properly raised that as an issue on appeal, and we will not consider it.

■ The district court awarded a judgment against Kelvin for $94,359.37 on three grounds: special damages for slander of title, attorney fees under Idaho Code § 12–120, and attorney fees under Idaho Code § 12–121. Appellants have not properly raised on appeal the validity of the award on two of those grounds. Therefore, even if the district court erred in awarding damages against him for slander of title, the error was harmless because it simply duplicated the award made under Idaho Code §§ 12–120 and 12–121.

**D. Did the District Court Err in Awarding Costs and Attorney Fees Against the Silver Star Nevada Trust?**

■ The Silver Star Nevada Trust was created on August 27, 1992, with $1.00 by Fred, Phyllis, and Kelvin Wolske. The beneficiaries of the Trust are the Wolskes' children and grandchildren. Respondents named it as a defendant because it is the devisee of the Wolskes' Estates under their wills. With the deaths of his parents, Kelvin is the sole trustee. The parties have proceeded as if the Trust is a separate legal entity, and we express no opinion on that issue. The district court awarded Respondents costs and attorney fees against all defendants, including the Trust. The Trust contends that court costs and attorney fees cannot be awarded against it because it disclaimed any interest in the real property. It relies upon Idaho Code § 6–402 which provides, "If the defendant in such action [for quiet title] disclaim in his answer any interest or estate in the property, or suffer judgment to be taken against him without answer, the plaintiff can not recover costs."

As an affirmative defense in its answer, the Trust did allege, "Pursuant to I.C. § 6–402, if the defendants disclaim in their answer any interest or estate in the property, the Plaintiffs can not recover costs against The Silver Star Nevada Trust." In response to the quiet title cause of action, the Trust

alleged that it "currently has no interest or estate in the property that is the subject of the First Amended Complaint." The Trust also alleged as part of its affirmative defenses, however, two pages of allegations supporting the claim that the Wolskes had title to the real property at the times of their deaths. It alleged, among other things, that the warranty deed and Agreement constituted a mortgage; that the statute of limitations bars foreclosure of the mortgage; that the Andersons never did have and do not have the right to exclusive possession of the real property; that Fred and Phyllis Wolske and/or their respective estates have always had ownership and possession of the real property; and that the amended complaint, including the claim for quiet title, should be dismissed.

The district court found that the Trust did not effectively disclaim any interest in the real property, and we agree. The Trust alleged that it *currently* did not have any interest in the real property, apparently because the property in the Wolskes' Estates had not yet been distributed to it. It also alleged, however, two pages of allegations supporting the claim that the Wolskes had title to the real property and that the quiet title action should be dismissed. The Trust and the other defendants were represented by the same counsel, and the Trust has not pointed to anything in the record indicating that it did not participate in the litigation in the same manner as the other defendants. The Trust has attempted to be on both sides of the fence at the same time—on the one hand stating it has no *current* interest in the real property and on the other alleging and seeking to prove that the Wolskes owned the real property at their death, in which case the property would go to the Trust. An effective disclaimer is just that; it disclaims any interest in the real property. Because the Trust did not do so, the district court did not err in awarding costs and attorney fees against it.

**E. Did the District Court Err in Awarding Damages for Slander of Title Against the Wolskes' Estates and the Silver Star Nevada Trust?**

■ The Appellants listed in their opening brief an assignment of error that the

district court erred in awarding damages for slander of title against the Wolskes' Estates and the Silver Star Nevada Trust. They confined their argument, however, to whether the district court erred in awarding the damages against the Trust. Therefore, we will not consider whether it erred in awarding damages against the Wolskes' Estates. We will not consider assignments of error not supported by argument and authority in the opening brief. *Suitts v. Nix,* 141 Idaho 706, 117 P.3d 120 (2005).

The district court awarded damages against the Trust on the ground that it had ratified Kelvin Wolske's conduct of recording the quitclaim deed. The Trust alleges that there is insufficient evidence supporting the finding that it ratified that conduct. We need not address that issue, however. As mentioned above, the district court awarded costs and attorney fees against all defendants on three grounds: damages for slander of title, Idaho Code § 12–120, and Idaho Code § 12–121. Other than arguing that the Trust had disclaimed any interest in the real property, Appellants have not properly raised as an issue on appeal the award against the Trust based upon Idaho Code §§ 12–120 and 12–121. Therefore, even if the district court erred in awarding damages against the Trust for slander of title, such error was harmless.

**F. Are Respondents Entitled to an Award of Attorney Fees on Appeal Pursuant to Idaho Code § 12–121?**

Respondents seek an award of attorney fees on appeal pursuant to Idaho Code § 12–121. They can be awarded attorney fees under that statute only if the appeal was brought frivolously, unreasonably, or without foundation. *Gustaves v. Gustaves,* 138 Idaho 64, 57 P.3d 775 (2002). An award of attorney fees is appropriate if the appellant simply invites the appellate court to second-guess the trial court on conflicting evidence. *Id.* That is all that this appeal has sought. It asks us to second-guess the trial court on conflicting evidence. The Respondents are entitled to an award of attorney fees on appeal pursuant to Idaho Code § 12–121.

## IV. CONCLUSION

We affirm the judgment of the district court. We award costs, including attorney fees, to the respondents.

Chief Justice SCHROEDER and Justices TROUT, BURDICK and JONES concur.

