# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 43640-2015

NATHON A. BAUGHMAN and MELISSA
K. KEMPTON-BAUGHMAN, husband and
wife,

       Plaintiffs-Appellants,

v.

WELLS FARGO BANK, N.A.; MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, INC.; CHEVY CHASE BANK,
F.S.B., and CAPITAL ONE, N.A., U.S.
BANK, N.A., Trustee for Master Adjustable
Rate Mortgage Trust Pass Through
Certificates, Series 2007-3,

       Defendants-Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Lewiston, April 2017 Term

2017 Opinion No. 50

Filed: May 26, 2017

Stephen W. Kenyon, Clerk

---

Appeal from the District Court of the First Judicial District of the State of Idaho, in and for Kootenai County. Hon. Lansing L. Haynes, District Judge.

The judgment of the district court is <u>affirmed</u>.

Henry D. Madsen, Madsen Law Offices, P.C., Coeur d'Alene, argued for appellants.

Kelly G. McConnell, Givens Pursley, LLP, Boise, argued for respondents.

---

EISMANN, Justice.

      This is an appeal out of Kootenai County from a judgment dismissing the Plaintiffs' claims, including that the statute of limitations under Idaho Code section 5-214A barred any foreclosure proceedings by the Defendants, and granting a counterclaim for judicial foreclosure of a deed of trust. We affirm the judgment of the district court.

## I.
## Factual Background.

Melissa K. Kempton-Baughman borrowed $1,192,000 from Chevy Chase Bank, F.S.B., to refinance real property located on 5583 East Shoreline Drive in Post Falls. She executed a promissory note in that amount payable to the bank, and as security for the loan, the Plaintiffs executed a deed of trust transferring the real property to First American Title Insurance Company as trustee. The promissory note required monthly payments and stated a maturity date of March 1, 2047. The deed of trust identified the note, and it defined the bank as the lender, the Plaintiffs as the borrowers, and Mortgage Electronic Registration Systems, Inc. ("MERS"), as the beneficiary, "acting solely as a nominee for Lender and Lender's successors and assigns." The deed of trust also stated, "Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than March 1, 2047." The deed of trust was properly recorded on February 26, 2007.

The Plaintiffs did not make the payment that came due in December 2007, and they have not made any further payments. On January 22, 2008, Chevy Chase Bank sent Ms. Kempton-Baughman a letter stating that her loan was in default and that the default had to be cured by February 22, 2008. The letter also stated:

> Your failure to cure said default on or before said date shall result in the acceleration (immediately becoming due and payable in full) of the entire sum secured by the loan security instrument and the immediate institution of foreclosure proceedings by either strict foreclosure or by sale of the property by public auction.
>     As provided in the loan security instrument, you have the right to reinstate the loan after loan acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense you may have to the acceleration and sale

The promissory note provided that if there was a default that was not cured by the date specified in a written notice from the holder of the note, the holder "may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount."

Plaintiffs apparently tried to work out a plan to cure the default. The bank sent Ms. Kempton-Baughman another similar letter dated April 15, 2008, stating that the loan was in default, and it sent her a letter dated May 14, 2008, which set forth a payment schedule to bring the loan current. She did not do so, and by letter dated July 16, 2008, the bank notified her that the default had to be cured by August 15, 2008. This letter included the same provision

2

regarding acceleration of the entire sum secured by the deed of trust that is quoted above from the letter dated January 22, 2008.

On November 15, 2008, MERS executed an "Assignment of Deed of Trust," transferring to UBS Investment Bank the promissory note and the beneficial interest in the deed of trust. That assignment was recorded on May 4, 2009.

On January 29, 2009, Pioneer Lenders Trustee Services, LLC, as successor trustee, recorded a "Notice of Default and Election to Sell Under Deed of Trust." The notice stated, "The beneficial interest under said deed of trust and the obligations secured thereby is currently held by UBS Investment Bank." The notice also stated,

> By reason of such Default, the Beneficiary under said Deed of Trust has executed and delivered to said Trustee a written declaration of default and demand for sale, and has deposited with said Trustee such Deed of Trust and all documents evidencing obligations secured thereby and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected to cause the trust property to be sold. Said sums being the following:
> > The unpaid principal balance of $1,234,272.29 together with interest thereon at the current rate of 7.875% per annum from 12/01/2007 until paid, plus all accrued late charges, escrow advances, attorney fees and costs, and any other sums incurred or advanced by the beneficiary pursuant to the terms and conditions of said deed of trust.

In her affidavit filed in opposition to the Defendants' motion for summary judgment, Ms. Baughman stated that she was personally served with this notice.

On June 4, 2009, the Plaintiffs filed a voluntary petition under Chapter 7 of the Bankruptcy Code. In their petition, they listed Chevy Chase Bank as a secured creditor, and they stated that it had a lien on the property at 5583 Shoreline Drive, that the lien was in foreclosure, that the secured debt exceeded the value of the property by $550,000, and that the property would be surrendered. On September 9, 2009, they received a discharge. They did not list UBS Investment Bank as a creditor.

On October 14, 2009, MERS executed an "Assignment of Deed of Trust," transferring to UBS Investment Bank the promissory note and the beneficial interest in the deed of trust. That assignment was recorded on November 20, 2009. On January 8, 2010, the property was sold at a nonjudicial foreclosure sale to UBS Investment Bank, and the trustee's deed was recorded on January 27, 2010.

On May 23, 2011, MERS executed an "Assignment of Deed of Trust" transferring to U.S. Bank N.A., as Trustee for Master Adjustable Rate Mortgage Trust Pass Through Certificates, Series 2007-3 ("US Bank"), the promissory note and all beneficial interest in the deed of trust. That assignment was recorded on June 22, 2011.

On May 24, 2011, Pioneer Title Company of Ada County, as successor trustee, recorded a "Notice of Rescission of Trustee's Deed Upon Sale." The notice of rescission stated that the trustee had "been informed by the Beneficiary that the beneficiary desires to rescind the Trustee's Deed recorded upon the foreclosure sale which was conducted in error due to a failure to communicate timely, notice of conditions which would have warranted a cancellation of the foreclosure which did occur on 1/8/2010." US Bank contends that the sale was void because UBS Investment Bank was a nonentity.

On July 2, 2013, the Plaintiffs filed this action seeking quiet title to the real property and an injunction against any further attempts to foreclose on the deed of trust. They named as Defendants Capital One, N.A. ("Capital One"); MERS; US Bank; Wells Fargo Bank, N.A.; and various other entities, but these four entities were apparently the only ones served because they were the only named Defendants who appeared in this lawsuit. Chevy Chase Bank, F.S.B., had merged with Capital One, and so Capital One appeared for itself and as successor by merger of Chevy Chase Bank, F.S.B. Therefore, the four Defendants who appeared in the lawsuit will be herein called the "Defendants."

The Plaintiffs contended in their complaint that any foreclosure proceeding was barred by Idaho Code section 5-214A. On February 7, 2014, they filed an amended complaint seeking a declaratory judgment, an injunction barring any foreclosure, quiet title to the real property, and damages for mesne profits and breach of contract. US Bank filed a counterclaim seeking judicial foreclosure of the deed of trust.

The Defendants moved for summary judgment on all counts of the Amended Complaint and US Bank moved for summary judgment on its counterclaim. The Plaintiffs moved for partial summary judgment determining that February 22, 2008, was the maturity date of the loan. After briefing and argument, the district court granted the Defendants' motion for summary judgment and denied the Plaintiffs' motion for partial summary judgment. It then entered a judgment in favor of US Bank. The Plaintiffs filed a motion for reconsideration, which the court

4

denied. The Plaintiffs appealed, and US Bank cross-appealed. According to the Plaintiffs, the property was sold in a foreclosure sale while their appeal was pending.

## II.

## Did the District Court Err in Granting the Defendants' Motion for Summary Judgment and in Denying the Plaintiffs' Motion for Partial Summary Judgment?

The Plaintiffs raise various issues challenging the district court's grant of the Defendants' motion for summary judgment and the denial of the Plaintiffs' motion for partial summary judgment. When reviewing on appeal the granting of a motion for summary judgment, we apply the same standard used by the trial court in ruling on the motion. *Infanger v. City of Salmon*, 137 Idaho 45, 46–47, 44 P.3d 1100, 1101–02 (2002). We construe all disputed facts, and draw all reasonable inferences from the record, in favor of the non-moving party. *Id*. at 47, 44 P.3d at 1102. Summary judgment is appropriate only if the evidence in the record and any admissions show that there is no genuine issue of any material fact regarding the issues raised in the pleadings and that the moving party is entitled to judgment as a matter of law. *Id*.

**A. Granting the Defendants' motion to take judicial notice.** The Defendants contended that the assignment of the promissory note and the beneficial interest in the deed of trust to UBS Investment Bank on October 14, 2009, and the deed to UBS Investment Bank after the nonjudicial foreclosure sale were void because UBS Investment Bank was not a legal entity. The Defendants filed a motion asking the district court to take judicial notice of: (a) copies of what were purported to be the Plaintiffs' voluntary petition in bankruptcy and discharge; (b) copies of what were purported to be a complaint and notice of dismissal of a federal lawsuit filed by the Plaintiffs; and (c) copies of what were purported to be screen shots of a computer search for the name "UBS Investment Bank" in the repository of the United States Federal Reserve System National Information Center. The Plaintiffs objected to the documents on the grounds of lack of foundation, none of the documents were certified, they were hearsay, and the federal lawsuit was not relevant. The court granted the Defendants' motion.

Rule 201(b) of the Idaho Rules of Evidence provides: "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." On appeal, the Plaintiffs argue:

5

> The documents were hearsay and lacked the laying of proper foundation and were, therefore, inappropriately admitted by the District Court because these types of documents cannot be said to be generally known within the District Court's jurisdiction and there was no source offered that the District Court relied upon that offered testimony as to the authenticity of the documents.

The Plaintiffs also argued that the documents relating the federal lawsuit were not relevant.

The Plaintiffs contend the district court's decision to take judicial notice of the documents offered by the Defendants was error, yet they do not present any argument or authority regarding whether the documents were "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." "We will not consider assignments of error not supported by argument and authority in the opening brief." *Hogg v. Wolske*, 142 Idaho 549, 559, 130 P.3d 1087, 1097 (2006). Therefore, we need not address this issue.

**B. Denying the Plaintiffs' motion to strike portions of two affidavits.** In support of their motion for summary judgment, the Defendants filed an affidavit of Ms. Mensah who was an employee of Capital One who was responsible for the Plaintiffs' loan. In her affidavit, she stated that the Plaintiffs were in default in 2008, that they had not made a payment since approximately 2007, and that US Bank was the current holder of the note and deed of trust. She also attached thirteen documents to her affidavit. The Plaintiffs also filed the affidavit of Ms. Dina, one of the Defendants' attorneys, who stated that persons at Capital One had informed her that UBS Investment Bank is not a legal entity and that UBS takes title to real property under the name of UBS Real Estate Securities, Inc. Ms. Dina also averred that an employee of UBS confirmed that UBS Investment Bank is not a legal entity that can take title to property. Ms. Dina described her internet search of the records of the Office of the Comptroller of the Currency, which disclosed that UBS Trust Company, National Association (Charter No. 24286), was included in the list of the National Banks & Federal Savings Associations that are chartered and regulated by the Office of the Comptroller of the Currency and that UBS Investment Bank was not listed as a bank chartered by the Comptroller. She also described her search of the annual filings by UBS Trust Company, N.A., with the Securities and Exchange Commission in 2009 and 2010; that the reports listed over 100 global subsidiaries of UBS Trust Company; and that UBS Investment Bank was not listed. The Plaintiffs objected to various portions of the two affidavits.

6

The hearing on the Plaintiffs' motion to strike portions of the affidavits followed the hearing on the Defendants' motion for judicial notice. The district court asked whether the motion to strike was moot based upon its granting of the motion for judicial notice. The Plaintiffs' counsel responded by stating that they were not admitting the motion was moot, but he objected to the affidavits to the extent that they stated legal conclusions. The court denied the motion to strike to the extent that the affidavits brought forth documents of which the court took judicial notice because that information was now moot. It then stated that it would disregard statements in the affidavits to the extent that they contained legal conclusions and make its own legal conclusions.

On appeal, the Plaintiffs assert that the district court erred in stating that part of the motion was moot "because the motion did present a real and substantial controversy that the District Court could have addressed but chose not to" and "even if the Motion to Strike was moot, the motion falls within the mootness doctrine exceptions, to wit: the court considering inadmissible evidence in ruling on the motions for summary judgment." That is the extent of the Plaintiffs' argument. They do not state what allegedly inadmissible evidence was considered by the court in ruling on the motions for summary judgment, nor do they argue that they suffered any prejudice from the alleged error. "A party alleging error on appeal must also show that the alleged errors were prejudicial." *Saint Alphonsus Diversified Care, Inc. v. MRI Assocs., LLP*, 157 Idaho 106, 122, 334 P.3d 780, 796 (2014). "[A]lleged errors not affecting substantial rights will be disregarded." *Weinstein v. Prudential Prop. and Cas. Ins. Co.*, 149 Idaho 299, 310, 233 P.3d 1221, 1232 (2010). Because the Plaintiffs have not presented any argument showing that the alleged errors affected their substantial rights, we will not address this alleged error.

**C. The district court's allegedly erroneous finding of fact.** On appeal, the Plaintiffs assert: "In its Memorandum Decision and Order the District Court found that the parties agreed that UBS Investment Bank, Inc. ("UBS") was a non-entity. This was erroneous because the Baughmans had disputed Defendants' assertion that UBS was a non-entity." To support that assertion, they cite to page four of their amended complaint. They do not cite to any portion of the court's decision where it allegedly stated that the parties agreed that UBS Investment Bank was a nonentity. "This Court will not search the record for error." *Miller v. Callear*, 140 Idaho 213, 218, 91 P.3d 1117, 1122 (2004). There is no showing that the court made the alleged error.

7

**D. The district court allegedly applying the wrong standard when deciding the summary judgment motions.** The Plaintiffs assert that "[t]he District Court applied court (bench) trial standards to its analysis of the cross motions for summary judgment." In support of that assertion, the Plaintiffs argued that "there was ample disputed evidentiary facts admitted into the record, yet the District Court resolved the conflicting evidence in its analysis"; that "the District Court considered the conflicting affidavit testimony, and exhibits incorporated therein, made credibility decisions and granted summary judgment to Defendants"; that "the District Court should have interpreted the facts in the light most favorable to the Baughmans"; and that "[i]f it had done so, it would have found in the Baughmans' favor on several of the key issues, e.g., acceleration and Defendants' lack of standing to foreclose." These conclusory assertions are the Plaintiffs' entire argument. They do not identify the allegedly disputed evidentiary facts or cite to the record regarding them, they do not identify the credibility decisions allegedly made by the court, and they do not identify the facts that should have been interpreted in the Plaintiffs' favor.

"The argument section of the appellant's brief 'shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes and parts of the transcript and record relied upon.' " *Bolognese v. Forte,* 153 Idaho 857, 866, 292 P.3d 248, 257 (2012) (quoting I.A.R. 35(a)(6)). Because the Plaintiffs wholly failed to comply with Rule 35(a)(6) with respect to this issue on appeal, we will not consider it. *VanderWal v. Albar, Inc.*, 154 Idaho 816, 823, 303 P.3d 175, 182 (2013).

**E. The district court's "findings of fact" in its Memorandum Decision.** The Plaintiffs allege that the district court's findings of fact in its Memorandum Decision were clearly erroneous. They argue, "At the hearing on the cross motions for summary judgment and the Motion for Reconsideration hearing, the Baughmans argued that UBS was the assignee of the Deed as to the subject property pursuant to the trustee's deed recorded on January 27, 2010." The evidence in the record shows that UBS Investment Bank was not a legal entity, and Plaintiffs do not point to any evidence in the record that would support a finding that UBS Investment Bank was a legal entity. In fact, in connection with their motion for summary judgment, the Defendants submitted a statement of undisputed facts, one of which was, "Fact 12: UBS Investment Bank is not a legal entity that can take title to property." In the Plaintiffs' filed response, they stated, "Plaintiffs lack sufficient information or belief to agree or disagree with

Fact 12." Because the Plaintiffs do not support this assignment of error with any citations to the record supporting it, we will not consider it. *Id.*

  **F. The district court's ruling on the statute of limitations.** The applicable statute of limitations is Idaho Code section 5-214A, which states:

> An action for the foreclosure of a mortgage on real property must be commenced within five (5) years from the maturity date of the obligation or indebtedness secured by such mortgage. If the obligation or indebtedness secured by such mortgage does not state a maturity date, then the date of the accrual of the cause of action giving rise to the right to foreclose shall be deemed the date of maturity of such obligation or indebtedness.

  The Plaintiffs contended that the loan was accelerated in 2008 based upon the wording of the notice of default sent to Ms. Kempton-Baughman on January 22, 2008. They rely upon the wording that their failure to cure the default by February 22, 2008, "*shall result* in the acceleration (immediately becoming due and payable in full) of the entire sum secured by the loan security instrument and the immediate institution of foreclosure proceedings by either strict foreclosure or by sale of the property by public auction." (Emphasis added.) They asserted that because they did not cure the default by that date, such notice constituted an acceleration of the entire amount owing on February 22, 2008. Because US Bank did not file its counterclaim for foreclosure until February 28, 2014, the Plaintiffs contend that the five-year statute of limitations barred any action to foreclose the deed of trust. The district court ruled that the statute of limitations did not begin to run until the recording on January 29, 2009, of the notice of default, which expressly declared that "all sums secured thereby [by the deed of trust] immediately due and payable."

  The district court incorrectly interpreted section 5-214A, but reached the right result. The first sentence of the statute states, "An action for the foreclosure of a mortgage on real property must be commenced within five (5) years from the maturity date of the obligation or indebtedness secured by such mortgage." It is clear from the second sentence of the statute that the reference to "the maturity date of the obligation or indebtedness" is the maturity date stated in that obligation or indebtedness. The second sentence states, "If the obligation or indebtedness secured by such mortgage *does not state* a maturity date, then the date of the accrual of the cause of action giving rise to the right to foreclose shall be deemed the date of maturity of such obligation or indebtedness." (Emphasis added.) The second sentence only applies if the

obligation or indebtedness *does not state* a maturity date. The first sentence must then logically apply to an obligation or indebtedness that does state a maturity date. Otherwise, the two sentences would conflict.

In this case, the promissory note expressly stated that the maturity date was March 1, 2047. There was no provision in the note providing that the maturity date would change if the amounts owing under the note were declared to be immediately due and payable because of a default. Therefore, the five-year statute of limitations for foreclosure would not begin to run until March 1, 2047. The foreclosure action stated in US Bank's counterclaim was not barred, even if the January 22, 2008, notice of default could be construed as accelerating the due date of the sums owing under the note. The district court did not err when it held that the Defendants' action to foreclose the mortgage was not time barred.

The Plaintiffs cite *The Union Central Life Insurance Company v. Keith*, 58 Idaho 471, 74 P.2d 699 (1937), for the proposition that the statute of limitations begins to run when the note holder accelerates as due all sums owing under a promissory note. The original version of Idaho Code section 5-214A was enacted in 1951, ch. 254, § 1, 1951 Idaho Sess. Laws 254, 255, almost fourteen years after that case was decided. They also cite *Thomas v. Goff*, 100 Idaho 282, 596 P.2d 794 (1979), but that case dealt with the accrual of a cause of action under Idaho Code section 5-216, which sets forth the statute of limitations in "[a]n action upon any contract, obligation or liability founded upon an instrument in writing." *Id*. at 285, 596 P.2d at 797. The case did not involve an action to foreclose a mortgage, which is governed by section 5-214A.

**G. The district court's decision that the Plaintiffs were not entitled to recover mesne profits.** In their amended complaint, the Plaintiffs asserted a cause of action for mesne profits. They alleged that they rented the real property as a vacation rental and that they suffered damages from lost rentals from the sale of the property to UBS Investment Bank on January 8, 2010, until they learned of the rescission of that sale on June 7, 2011. In holding that they were not entitled to recover mesne profits, the district court gave three alternative grounds for denying their claim for mesne profits. It wrote:

> [1] Because the Court has found that the 2010 sale of the property was not an illegal foreclosure, Defendants did not wrongfully possess the property. [2] Further, Defendants had a right to secure and protect the property during the time from the sale or transfer of the property until the Notice of Rescission of Trustee's Deed Upon Sale was recorded pursuant to the Deed of Trust. [3] Lastly, the Court finds that it would be inequitable to allow the Baughmans to recover lost

10

rent profits when U.S. Bank has been unable to, and will not be able to, recover its lost profits due and owing under the parties' agreements. Therefore, Plaintiffs are not entitled to an award of mesne profits.

In asserting on appeal that the district court erred, the Plaintiffs' entire argument is, "Because the Defendants had no lawful right to assert control, due to the illegal foreclosure action, the Baughmans were deprived of rental income and the District Court should not have dismissed the loss of mesne profits claim." "We will not consider assignments of error not supported by argument and authority in the opening brief." *Hogg*, 142 Idaho at 559, 130 P.3d at 1097. In addition, "if an appellant fails to contest all of the grounds upon which a district court based its grant of summary judgment, the judgment must be affirmed." *AED, Inc. v. KDC Investments, LLC*, 155 Idaho 159, 164, 307 P.3d 176, 181 (2013). The Plaintiffs did not present argument and authority showing that the court erred with respect to any of the three grounds stated by the court, much less all three of them. Therefore, they have not shown that the district court erred.

**H. The dismissal of the Plaintiffs' claim for breach of contract.** In their amended complaint, the Plaintiffs alleged as a claim for breach of contract that "Defendant Chevy Chase's sale of the subject property was a violation of the Deed of Trust, which only allowed sale under specific circumstances, none of which applied to BAUGHMAN." They are referring to the nonjudicial foreclosure sale on January 8, 2010, when the property was purportedly sold to UBS Investment Bank.

The Defendants' statement of undisputed facts included the following:

5. The Deed of Trust provides that if the Baughmans breach any covenant or agreement contained in the Deed of Trust, the trustee (at the lender's request) may sell the Property.
6. In 2008, the Baughmans breached their obligations by, among other things, failure to make monthly payments when due and defaulted under the terms of the Note and Deed of Trust.

In their statement of undisputed facts, the Plaintiffs stipulated to Fact 5, and with respect to Fact 6 they stated, "Plaintiffs agree and stipulate that in 2008 they failed to make monthly payments due under the Note and Deed of Trust, Plaintiff [sic] do not stipulate or agree that they breached any other obligations due under the Note and Deed of Trust." The Plaintiffs do not argue that failing to make the payments as they come due is not one of the "specific circumstances" that would authorize foreclosure.

The Plaintiffs appear to argue that UBS Investment Bank did not have authority to foreclose on the property because the assignment of the promissory note and beneficial interest in the deed of trust did not occur until May 4, 2009, which was four months after the January 29, 2009, notice of default. The assignment was recorded on May 4, 2009, but the date of the assignment was November 15, 2008. In their affidavits opposing the Defendants' motion for summary judgment, Mr. and Ms. Baughman both stated that they were personally served with the January 29, 2009, notice of default. That notice stated as a separate paragraph, "The beneficial interest under said deed of trust and the obligations secured thereby is currently held by UBS Investment Bank."

Finally, Plaintiffs argue that Idaho Code section 45-1510 does not authorize the rescission of a trustee's sale merely because the purported holder of the promissory note and deed of trust is a nonentity and the trustee's deed is issued to that nonentity. They state, "The statute does not provide for a lender to rescind a sale due to its own errors."

Their breach of contract claim alleged in their amended complaint is not based upon the rescission of the trustee's deed. Nevertheless, the applicable portion of Idaho Code section 45-1510 states:

> (2) Where a trustee's sale held pursuant to section 45-1506, Idaho Code, is invalid by reason of automatic stay provisions of the U.S. bankruptcy code, or a stay order issued by any court of competent jurisdiction or otherwise, recordation of a notice of rescission of the trustee's deed shall restore the condition of record title to the real property described in the trustee's deed and the existence and priority of all lienholders to the status quo prior to the trustee's sale. . . . .

The statute permits rescission when the sale is invalid for one of three reasons: (1) by reason of automatic stay provisions of the U.S. bankruptcy code, (2) by reason of a stay order issued by any court of competent jurisdiction (3) or is otherwise invalid. The trustee's sale in this case was invalid for the third reason. The purported transfer of the promissory note and beneficial interest in the deed of trust was made to a purported entity that did not exist, and the trustee's deed was made to a purported entity that did not exist. "In order that an instrument may be operative as a deed conveying title to, or interest or estate in, land, the grantee named in the deed must be a person, natural or artificial, in existence at the time of conveyance and capable of taking title." 23 Am. Jur. 2d § 21 (2013) (footnotes omitted). "A deed to a fictitious grantee, or which names as grantee a person who has no existence, is inoperative and void." *Id*.

12

**I.  The remaining issues raised by the Plaintiffs and US Bank's Counterclaim**.  The remaining issues raised by the Plaintiffs are that the district court erred in:  (a) denying their motion for an injunction barring any foreclosure, (b) refusing to grant their claim for quiet title to the real property, (c) granting US Bank permission to foreclose, (d) dismissing the Plaintiff's action with prejudice, (e) denying their motion to continue the hearing on their motion for reconsideration so they could conduct further discovery as to when the loan was accelerated, (f) denying their motion for reconsideration as to when the loan was accelerated, (g) issuing the decree of foreclosure, and (h) issuing a writ of execution.  All of these alleged errors are resolved by the above decision.  US Bank's counterclaim deals with the interpretation of Idaho Code section 5-214A, which has also been resolved.

### III.

### Is Either Side Entitled to an Award of Attorney Fees on Appeal?

The Plaintiffs seek an award of attorney fees pursuant to Idaho Code section 12-121.  "In order to be eligible for an award of attorney fees under Idaho Code section 12-121, the party must be the prevailing party on appeal." *Armand v. Opportunity Mgmt. Co., Inc*., 155 Idaho 592, 602, 315 P.3d 245, 255 (2013).  The Plaintiffs have not prevailed on this appeal.

The Defendants also seek an award of attorney fees pursuant to Idaho Code section 12-121.  Attorney fees can be awarded under that section only when this Court finds that the appeal was brought, pursued, or defended frivolously, unreasonably, or without foundation.  Ch. 47, § 2, 2017 Idaho Sess. Laws 75, 76.  "Apportionment of attorney fees is appropriate for those elements of the case that were frivolous, unreasonable, and without foundation." *Idaho Military Historical Soc'y, Inc. v. Maslen*, 156 Idaho 624, 632, 329 P.3d 1072, 1080 (2014).  The interpretation of Idaho Code section 5-214A was a matter of first impression in this appeal, and therefore we will not award attorney fees on that issue pursuant to Idaho Code section 12-121. The remaining issues on appeal were pursued frivolously and without foundation, so we will award the Defendants attorney fees in responding to those issues.

### IV.
### Conclusion.

13

We affirm the judgment of the district court, and we award Respondents costs on appeal and attorney fees on appeal for responding to all issues other than the interpretation of Idaho Code section 5-214A.

Chief Justice BURDICK, and Justices JONES, HORTON and BRODY **CONCUR.**